Filed 11/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B247666 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GA070794) |
| v. | |
| RAUL PEDROZA, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County. Kathleen Kennedy, Judge. Affirmed.

Jackie Lacey, District Attorney, Phyllis Asayama and Ann H. Park, Deputy District Attorneys, for Plaintiff and Appellant.

Law Offices of Pritz & Associates and Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

**INTRODUCTION**

In November 1998, Donald Schubert was murdered. In April 2012, a jury convicted defendant Raul Pedroza of the first degree murder of Schubert and conspiracy to commit the murder. The jury also found true gang enhancement allegations. The prosecution's case against defendant relied in large part on the testimony of an accomplice. Following the guilty verdict, the trial court granted defendant's motion for a new trial, explaining the evidence corroborating the testimony of the accomplice was insufficient. Subsequently, the trial court granted defendant's motion for dismissal, concluding double jeopardy barred retrial.

On appeal, the People contend the trial court erred in concluding the evidence corroborating the accomplice's testimony was insufficient, and accordingly the trial court erred in granting the new trial motion. The People further contend the trial court erred in dismissing the case; the People assert the court reweighed the evidence and granted the motion for new trial under Penal Code section 1181, rather than issuing an acquittal, thus double jeopardy did not bar retrial.[1]

We affirm the trial court orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.      **Prosecution Evidence**

       A. *Non-accomplice testimony*

       On the evening before Thanksgiving in November 1998, Margaret O. was at her apartment in Rosemead with her boyfriend, Donald Schubert, and other family members, including her daughter, Raquel S. Some time after 10:00 or 10:30 p.m., there was a knock on the door. After Raquel was unable to see anyone through the peephole, Schubert opened the door. Schubert stepped outside and spoke with someone. A minute or two later, Schubert reentered the apartment with Daniel Ahumada. Ahumada waited while Schubert put on a shirt, socks, and shoes, then the two men left. Neither Margaret nor Raquel saw any weapons on Ahumada. After the two men left, Margaret and Raquel

---

[1]     All further statutory references are to the Penal Code.

2

heard multiple gunshots.[2]  Margaret and Raquel looked out a bedroom window.  They saw one or two people running up a dirt hill to a brick wall, but could not recognize them.  Margaret and Raquel then left the apartment and found Schubert's body lying in a carport area.  Schubert had suffered "multiple injuries."  According to a police officer who responded to a 10:50 p.m. radio call to report to the scene, the top portion of Schubert's skull was missing; blood and brain matter could be seen behind his head.

At some point that same night, after 11:00 p.m., Lisa G. heard loud banging noises from the garage at her townhome in Ontario.  Lisa lived with Joseph Garivay, who later became her husband.  Garivay, defendant, and Ahumada were all members of the Las Lomas gang.  When Lisa heard the banging noises, she realized Garivay was not in bed next to her.  At some point between 2:00 and 3:00 a.m., Lisa went downstairs to the garage.  She heard men talking.  When she entered the garage she saw Garivay, defendant, Ahumada, and another Las Lomas gang member, Javier Renteria.  The men were drinking and the conversation seemed "upbeat."  Lisa did not see any weapons in the garage.  Later that day, Lisa gave Ahumada a ride to West Covina.  Ahumada had something with him that looked like a gun.  Lisa heard Ahumada talking on his cell phone during the ride.  Ahumada said something to the effect of: "I remember blasting him and seeing beer come of out of his stomach," and that he had blasted "Pato," Schubert's gang moniker.

According to a gang expert, Schubert was also a member of the Las Lomas gang.  The gang had over 400 members.  In the late 1990s, there were frequent "in-house murders" in the Las Lomas gang, in which a gang member would murder another member of the gang.

B. *Accomplice Testimony*

Ahumada testified at trial. He, defendant, Schubert, Garivay, and Renteria were all members of the Las Lomas gang.  According to Ahumada, the night before Thanksgiving in November 1998, he was selling rock cocaine at the apartment complex where Schubert

---

[2]  Margaret heard five gunshots; Raquel heard two or three.

lived. He encountered defendant and Garivay and spoke with them. Garivay asked Ahumada to go to Schubert's house and call him outside. Garivay said Schubert owed him money and he wanted to be repaid but Schubert had been avoiding him. Ahumada agreed to bring Schubert outside. Garivay told Ahumada to tell Schubert that Ahumada needed help with his car.

Ahumada went to Schubert's apartment and knocked on the door. Schubert's girlfriend's daughter opened the door; Ahumada asked for Schubert. When Schubert came to the door, Ahumada asked for help with his car. Schubert put on his shoes and left the apartment with Ahumada. Ahumada led Schubert to the carport area. As they were walking, Ahumada heard two shots. Ahumada crouched and ran. When he looked over his shoulder he saw defendant standing with a revolver pointed toward Schubert. Garivay walked to Schubert and shot him twice more with a shotgun. Garivay yelled, "Let's go." The three men ran up a nearby hill and jumped over a wall. A car was waiting. Renteria was in the driver's seat. The men drove to Garivay's house, which was around 20 minutes away. Ahumada testified he stayed at the house for two days. He denied having a cell phone conversation while Lisa drove him "home," and denied saying that he shot or killed Schubert, or that he saw beer coming out of him. Ahumada denied having a gun with him; instead he testified defendant and Renteria left the Garivay house with guns.

At the time of trial, Ahumada was serving a 15-years-to-life sentence. He had pleaded guilty and was convicted as an aider and abettor in the murder.

## II. Defense Evidence

On cross-examination, Lisa testified she went to bed around 11:00 p.m. the night before Thanksgiving, and Garivay was in bed with her. She testified that between 10:00 p.m. and 11:00 p.m. that night, Garivay was with her in Ontario. She also testified she was awakened by a noise between 2:00 and 3:00 a.m. the next morning, but she did not get out of bed immediately; she returned to sleep and, only hours later, went downstairs and saw the group of men. She admitted she had previously testified that between 2:00 and 3:00 a.m. she heard a telephone call and a loud knocking noise, then Garivay went

4

downstairs; she did not go downstairs until several hours later. She also admitted that she told police in an interview that she first went downstairs sometime between 7:00 a.m. and noon. Lisa admitted that at 2:00 or 3:00 a.m., when she heard the banging noise, she did not know who was in the house. She also testified that Ahumada did not stay at her house for two days; instead she drove him to West Covina the morning of Thanksgiving.

On cross-examination, Ahumada admitted that two years before the murder, he and Schubert had a fistfight. Ahumada asserted the dispute was between Schubert and Ahumada's "homeboy"; Ahumada stepped into the dispute on his friend's behalf and Schubert punched him.

Police recovered shoe prints from the hill near the apartment complex where Schubert was killed. None of the prints matched two pairs of shoes taken from defendant's home.

### III. Relevant Procedural History

After the prosecution rested its case, defendant moved for acquittal pursuant to section 1118.1. Defendant argued there was no evidence connecting him to the conspiracy, or of him participating in a homicide, or possessing a firearm, unless one believed Ahumada. Defendant then argued Ahumada's accomplice testimony had to be corroborated, and it had not been. The trial court denied the motion.

The jury found defendant guilty of first degree murder (§ 187, subd. (a)) and conspiracy to commit murder (§ 182, subd. (a)(1)). With respect to both crimes, the jury found true allegations that a principal personally used and discharged a firearm and gang enhancements. (§ 12022.53, subds. (b), (c), (d), (e)(1); § 186.22, subd. (b)(1).) The jury found defendant not guilty of possession of a firearm by a felon.

Defendant moved for a new trial, citing section 1181 as authority. In the motion, defendant argued there was insufficient evidence to corroborate Ahumada's testimony, and, excluding Ahumada's testimony, the evidence was insufficient to establish defendant's participation in Schubert's murder. The People opposed the motion, arguing there was legally sufficient corroboration of Ahumada's testimony. In reply, defendant again argued there was no legally sufficient corroboration of Ahumada's testimony, thus

5

a new trial was required; defendant also urged the court had the discretion to independently reweigh the credibility of trial witnesses, and Ahumada's testimony could not be believed. The court granted the motion for a new trial, noting: "I have never granted a motion for new trial in 24 years on the bench. However, I do feel that in looking at everything, that the corroboration was insufficient." The court set a date for the parties to return to court.

Defendant then filed a motion to dismiss the case based on double jeopardy. Defendant argued that since the trial court ruled the evidence at the first trial was insufficient as a matter of law to corroborate Ahumada's testimony, under *Hudson v. Louisiana* (1981) 450 U.S. 40 (*Hudson*), and related cases, double jeopardy barred retrial. The People responded that the court could not acquit defendant pursuant to section 1181. Instead, the People asserted the court sat as a thirteenth juror when ruling on the new trial motion, and, as a result, retrial was permitted. The trial court granted the motion to dismiss. The court explained: "[I]n this case I do feel there was insufficient corroboration as a matter of law. [¶] The court did not make its ruling setting it as the 13th juror. I think the United States Supreme Court case, *Hudson v. Louisiana* . . . is absolutely on point. And therefore, I do feel that a retrial on this case is barred by the double jeopardy provisions of the United States Constitution, and this case is dismissed."

The People timely appealed.

## DISCUSSION

On appeal, the People contend the trial court erred as a matter of law in concluding there was no legally sufficient evidence to corroborate Ahumada's testimony. The People further contend the trial court erred in dismissing the case on double jeopardy grounds. The People assert double jeopardy bars retrial only when there is a trial court ruling constituting an acquittal, and here the trial court granted the motion for a new trial after reweighing the evidence as the 13th juror. Defendant counters that both the dismissal order and the order granting a new trial constituted acquittals for double jeopardy purposes, thus neither order is appealable. We conclude that although both

6

orders may be reviewed on appeal, the trial court did not err in granting the motion for new trial or in dismissing the case.

**I.      The Trial Court Rulings Were Acquittals**

We first consider the proper characterization of the trial court orders. The People argue the trial court erroneously granted the motion for new trial after reweighing the evidence under section 1181, subdivision (6) (section 1181(6)), and the court erred again in dismissing the case because the grant of a motion for a new trial under section 1181(6) was not an acquittal for double jeopardy purposes, and retrial was not barred.

Defendant argues both the order granting a new trial and the order dismissing the case were acquittals for double jeopardy purposes. Defendant further asserts that, erroneous or not, these orders cannot be reviewed on appeal because reversal would lead to an impermissible second trial.

We conclude the trial court ruled there was insufficient evidence as a matter of law, and this ruling constituted an acquittal. However, we also conclude in the next section that because the acquittal occurred after the jury rendered a guilty verdict, the dismissal order is appealable.

*Summary of Relevant Facts*

As detailed above, defendant's motion for a new trial invoked section 1181(6) and sought a new trial on the ground there was insufficient corroboration of Ahumada's testimony.[3] The trial court granted the motion, finding the "corroboration was insufficient." Subsequently, defendant filed a motion to dismiss the case on double jeopardy grounds, citing *Hudson, supra,* 450 U.S. 40. The People opposed the motion, arguing the trial court's finding of insufficient evidence related to the standard required for section 1181, thus the court had made no findings requiring dismissal. At the hearing on the motion, the court explicitly stated it had not made its ruling granting a new trial as

---

[3]      Under section 1181, subdivision (6), "[w]hen a verdict has been rendered . . . against the defendant, the court may, upon [defendant's] application, grant a new trial . . . [w]hen the verdict or finding is contrary to law or evidence [.]"

a 13th juror, and further stated it found there was insufficient corroboration as a matter of law.

*Relevant Legal Principles*

To guide our analysis, we review two post-trial mechanisms for a trial court to reject a jury verdict, and the Constitutional principles set forth in *Hudson*, which the trial court cited as a basis for its decision.

The defendant's new trial motion invoked section 1181(6) which provides that after a verdict against the defendant, the trial court may grant a new trial when the verdict is contrary to law or evidence. In *Porter v. Superior Court* (2009) 47 Cal.4th 125, 133 (*Porter*), the California Supreme Court explained the trial court's role when ruling on a motion for new trial under section 1181(6): "The court extends no evidentiary deference in ruling on an 1181(6) motion for new trial. Instead, it independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge,* who sits, in effect, as a '13th juror.' [Citations.] If the court is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the jury's verdict is 'contrary to the . . . evidence.' (§ 1181(6); [Citation].) In doing so, the judge acts as a 13th juror who is a 'holdout' for acquittal. Thus, the grant of a section 1181(6) motion is the equivalent of a mistrial caused by a hung jury. [Citation.] We have repeatedly held that an order granting a new trial under section 1181(6) is not an acquittal and does not bar retrial on double jeopardy grounds. [Citations.] [¶] Significantly, a court has no authority to grant an acquittal in connection with an 1181 motion." (*Porter*, at p. 133.)

With respect to post-verdict judicial dismissals, under section 1385, a trial court may dismiss a case for insufficient evidence as a matter of law, after submission of the case to the jury.[4] Unlike a finding of insufficient evidence that allows a court to grant a

---

[4]  Section 1385, subdivision (a) provides: "The judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes."

new trial under section 1181(6), a finding of insufficient evidence as a matter of law precludes retrial. As explained in *People v. Hatch* (2000) 22 Cal.4th 260, 268-271 (*Hatch*), "the United States Supreme Court [has] held that the Fifth Amendment precludes retrial if a court determines the evidence at trial was insufficient to support a conviction as a matter of law. (*Burks v. United States* (1978) 437 U.S. 1, 18 [(*Burks*)].) Thus, an appellate ruling of legal insufficiency is functionally equivalent to an acquittal and precludes a retrial. (See *id.* at pp. 16-17.) An analogous trial court finding is also an acquittal for double jeopardy purposes. [Citations.] Where a court merely 'disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence,' however, a reversal or dismissal on that ground does not bar retrial." (*Hatch*, at pp. 271-272.) The same principles apply under the California Constitution. (*Id.* at p. 272.)

Although a trial court is authorized under section 1385 to dismiss a case for insufficient evidence as a matter of law after the case is submitted to the jury, "we will not construe [a trial court's] dismissal as an acquittal for double jeopardy purposes absent clear evidence the court intended to exercise this power." (*Hatch*, at p. 271.) For a trial court dismissal to be construed as an acquittal, "the record must show that the court viewed the evidence in the light most favorable to the prosecution and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt. [Citation.] Absent such a showing, we will assume the court did *not* intend to dismiss for legal insufficiency and foreclose reprosecution." (*Hatch*, at p. 273.)

However, in setting these guidelines, the *Hatch* court explained it did not "intend to impose rigid limitations on the language trial courts may use to dismiss for legal insufficiency of the evidence pursuant to section 1385. Certainly, courts need not restate the substantial evidence standard or use certain 'magic words' whenever they determine that the evidence is insufficient as a matter of law. We merely ask trial courts to make their rulings clear enough for reviewing courts to confidently conclude they viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict." (*Hatch,* at p. 273.)

9

Irrespective of statutory labels, double jeopardy principles may apply and bar a retrial when the trial court finds there was insufficient evidence as a matter of law. (*Hatch,* at pp. 270-271.) For example, in *Hudson*, a Louisiana jury found the defendant guilty of first degree murder. The defendant moved for a new trial, which was the only way of challenging the sufficiency of the evidence in that state. (*Hudson, supra,* 450 U.S. at p. 41.) The trial court granted the motion, stating it was convinced there was no evidence, and certainly no evidence beyond a reasonable doubt, to sustain the guilty verdict. (*Ibid.*) Following the second trial, the defendant filed a writ of habeas corpus, contending the double jeopardy clause barred the second trial since the first trial court had found the evidence legally insufficient. (*Id.* at p. 42.) The Supreme Court agreed. Although the trial court granted a new trial, the court concluded the record made clear the judge granted the motion on the ground that the evidence was legally insufficient. The court rejected the State's argument that the trial court granted a new trial only because it personally doubted the verdict: "The trial judge granted the new trial because the State had failed to prove its case as a matter of law, not merely because he, as a '13th juror,' would have decided it differently from the other 12 jurors. Accordingly, there are no significant facts which distinguish this case from *Burks* [*v. United States, supra,* 437 U.S. 1], and the Double Jeopardy Clause barred the State from prosecuting petitioner a second time." (*Hudson,* at pp. 44-45, fns. omitted.)

In *Burks, supra,* 437 U.S. 1, the court held that when either a trial court or a reviewing court determines the evidence offered at trial was legally insufficient to support a conviction, the double jeopardy clause bars retrial, even if the defendant has sought a new trial as a remedy. (*Id.* at p. 17.) While the court distinguished a reversal for trial error which "does not constitute a decision to the effect that the government has failed to prove its case," and therefore does not prevent a new trial, "[t]he same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." (*Id.* at pp. 15-16, fn. omitted.)

10

*Discussion*

In light of the proceedings, we cannot accept the People's argument that the court granted the motion for a new trial based on a reweighing of the evidence as a 13th juror. Although the court did not invoke section 1385, and defendant instead referred to section 1181(6) as the basis for his motion for a new trial, the record here is not otherwise ambiguous. At the hearing on the dismissal motion, the court explicitly stated it found insufficient evidence as a matter of law, and further stated it did not make its ruling as a 13th juror. The court also cited *Hudson* as authority for the dismissal. Moreover, although the court issued two rulings—one granting the motion for new trial, and one dismissing the case—it is apparent that the court considered the new trial order to be an acquittal and the dismissal order flowed from the new trial order. In ruling on the motion to dismiss, the trial court clarified that the order granting the motion for new trial was based on legally insufficient evidence. As such, retrial was barred, and the order granting a new trial could have no effect.

*People v. Salgado* (2001) 88 Cal.App.4th 5 (*Salgado*) is instructive. In *Salgado,* the trial court sua sponte granted a motion for new trial on one count, then immediately dismissed the count. (*Id.* at p. 8.) The People appealed both orders, arguing the court exceeded its authority in granting a new trial, and that granting a new trial and dismissing the count were inconsistent rulings. While the appellate court agreed the trial court did not have authority to sua sponte grant a new trial, it concluded the error did not invalidate the contemporaneous dismissal of the count. (*Id.* at p. 9.) The court reasoned that although the trial court's order indicated it was acting under section 1181(6), the record established that all the conditions of a section 1385 dismissal were satisfied. (*Ibid.*) In addition, "[i]f the dismissal is correct upon any legal theory applicable to the case, it will be upheld on appeal regardless of the court's stated explanation of the ruling. [Citation.] Also, a defect in the form of the motion should not be construed to undermine the trial court's duty to protect the fundamental rights of the accused. [Citations.] Despite its deficient form, the dismissal of the carjacking count was consistent with this constitutional duty." (*Id.* at pp. 9-10.)

11

The *Salgado* court explained the record showed the trial court dismissed the count based on a conclusion that there was insufficient evidence to support the conviction as a matter of law, and it was clear the court applied the proper substantial evidence test, viewed the evidence in the light most favorable to the prosecution, and concluded no reasonable trier of fact could convict. The supporting evidence included the trial court's statements that there was "insufficient evidence to support a conviction," and that " 'there simply is not legally sufficient evidence to support a conviction for the carjacking . . . .' " (*Id.* at p. 10.)

Similarly, in this case the record shows the trial court dismissed the case based on a conclusion that there was legally insufficient evidence to support a conviction, given the absence of legally sufficient corroboration of accomplice testimony. Although defendant initially moved for a new trial and the court granted that motion, the record establishes that dismissal, rather than the grant of a new trial, was the proper remedy flowing from the trial court's ruling, and the court eventually dismissed the case in response to defendant's motion.[5] Citing *Hatch*, the People assert the record does not clearly indicate the trial court "viewed the evidence in the light most favorable to the prosecution and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt," thus we may not find the court dismissed the case for insufficient evidence as a matter of law under section 1385. (*Hatch*, at p. 273.) We disagree. As the *Hatch* court explained, the trial court need not explicitly state the relevant standard. Here, the trial court's statements that it concluded the evidence was insufficient as a matter of law, and that there was insufficient corroboration of Ahumada's testimony, clearly indicate the trial court both granted a new trial and subsequently dismissed the case because it determined there was insufficient evidence as a matter of law.

---

[5]     In *People v. Watkins* (2012) 55 Cal.4th 999, 1019, footnote 11, the court noted: "We have . . . clarified that a defendant seeking to challenge the legal sufficiency of the evidence in the trial court after the case has been submitted to the jury should not move for a new trial under section 1181, subdivision 6, but should instead invite the court's dismissal under section 1385."

12

(See *People v. Johnston* (2003) 113 Cal.App.4th 1299, 1308-1310 [reviewing court analyzes trial court's statements and order to determine if court was reweighing evidence or ruling as a matter of law].) Nothing in the record gives us reason to ignore or discredit the trial court's statement: "The court did not make its ruling setting it as the 13th juror." We must construe the trial court's orders as an acquittal.

## II. The Dismissal Order is Reviewable on Appeal

We now address defendant's contention that the trial court's dismissal order is not appealable. Under section 1238, the People may appeal an order granting a new trial, as well as an "an order or judgment dismissing or otherwise terminating all or any portion of the action including such an order or judgment after a verdict or finding of guilty." (§ 1238, subds. (a)(3), (a)(8).) However, defendant contends double jeopardy barred any retrial, and therefore also barred the appeal in this case. Because the court dismissed the case *after* the jury rendered a guilty verdict, we conclude the court's dismissal order is reviewable on appeal.

In *Evans v. Michigan* (2013) --- U.S.--, 133 S.Ct. 1069 (*Evans*), the United States Supreme Court recently explained the principles regarding double jeopardy after a court-ordered acquittal: "[T]he Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is 'based upon an egregiously erroneous foundation.' [Citation.] A mistaken acquittal is an acquittal nonetheless, and we have long held that '[a] verdict of acquittal … could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.' [Citation.] . . . [O]ur cases have defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense. [Citations.] Thus an 'acquittal' includes 'a ruling by the court that the evidence is insufficient to convict,' . . . and any other 'rulin[g] which relate[s] to the ultimate question of guilt or innocence.' [Citation.]" (*Evans*, at pp. 1074-1075, citing *Fong Foo v. United States* (1962) 369 U.S. 141, *United States v. Ball* (1896) 163 U.S. 662, *Smith v. Massachusetts* (2005) 543 U.S. 462, *Sanabria v. United States* (1978) 437 U.S. 54; *United States v. Scott* (1978) 437 U.S. 82.)

13

Defendant relies on this language and that of similar cases to contend the rulings the People challenge may not be reviewed on appeal. However, in *Evans*, the court was concerned with a midtrial acquittal. (*Evans,* at p. 1073.) The court in fact noted that some jurisdictions avoid the problem of unreviewable but legally erroneous preverdict acquittals because they "allow or encourage their courts to defer consideration of a motion to acquit until after the jury returns a verdict, which mitigates double jeopardy concerns." (*Id.* at p. 1081, fn. omitted.) In the accompanying footnote, the court elaborated: "If a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court's acquittal, because reversal would result in reinstatement of the jury verdict of guilt, not a new trial." (*Id.* at p. 1081, fn. 9.)

This reasoning is consistent with *Salgado*. In *Salgado,* a jury convicted the defendant of carjacking and assault with a firearm. The trial court sua sponte granted a new trial of the carjacking count, then dismissed the count after finding the evidence was legally insufficient to support the verdict. (*Salgado, supra,* Cal.App.4th at p. 8.) The People appealed the new trial and dismissal orders. The *Salgado* court considered whether the dismissal order was appealable. The court explained that section 1238, subdivision (a)(8) provides express statutory authority for a People's appeal of a dismissal order following a guilty verdict. (*Salgado,* at pp. 11-12.) The *Salgado* court further concluded that since a successful appeal would not require retrial, the double jeopardy clause would not bar an appeal of the order. The court explained: "The purpose of the double jeopardy clause . . . is not undermined when the jury reaches a guilty verdict before the trial court acts. Even if it is the functional equivalent of an acquittal, appellate review of a dismissal for legal insufficiency will not result in another trial. Where the jury convicts and the court then 'acquits,' an error in the court's ruling can be corrected by restoring the jury verdict and entering judgment accordingly." (*Id.* at p. 13.) The court noted "[t]he distinction between preverdict and postverdict action by the trial court is established in federal case law and recognized in state cases," citing cases such as *United States v. Wilson* (1975) 420 U.S. 332, 345, *United States v. Martin Linen Supply*

14

*Co.* (1977) 430 U.S. 564, 569-570, and *People v. Cartwright* (1979) 98 Cal.App.3d 369. (*Salgado,* at pp. 13-15.)

Defendant contends *Salgado* is inapposite because in *Salgado* there was no motion for a new trial, but here, if the People successfully appealed the dismissal order, the order granting a new trial would still stand, resulting in a second trial for defendant. We are not persuaded. As explained above, we have concluded the trial court's order granting a new trial was an acquittal for double jeopardy purposes. The trial court did not engage in a two-step process in which it first granted the section 1181(6) motion after "13th juror" analysis, or based on other grounds (not an acquittal), then separately concluded there was insufficient evidence as a matter of law and dismissal was required (an acquittal).[6] Thus, this case does not present the possibility that we might reverse the order dismissing the case, but affirm the order granting a new trial, creating the potential for a post-acquittal new trial on remand.[7] Under the circumstances of this case, if we reverse the dismissal order, the same reasoning would apply to require reversal of the new trial order.

We find the reasoning of *Salgado* and *Evans* equally applicable to this case. The trial court's dismissal occurred after the jury's guilty verdict. If we were to find error and reverse the trial court's rulings dismissing the case, we would order the reinstatement of the jury verdict of guilt, not a new trial. Double jeopardy principles do not bar appellate review of the dismissal order or the new trial order. (See also *People v.*

---

[6]     If we accepted the People's argument that a) the new trial order was a section 1181(6)-based insufficiency of the evidence ruling and was not a legal acquittal; and b) the trial court then erroneously dismissed the case because double jeopardy principles did not bar retrial after the grant of a section 1181(6) motion, there would be no acquittal, and no bar to a new trial on remand.

[7]     While this appeal was pending, the California Supreme Court considered a related issue in *People v. Eroshevich* (Nov. 3, 2014, S210545) ___Cal.4th ___, 2014 WL 5510202. In *Eroshevich*, the court concluded that when the appellate court reverses a post-jury verdict, trial court acquittal, double jeopardy principles do not preclude retrial if, on remand, the trial court grants the defendant's new trial motion on grounds other than the insufficiency of the evidence. In light of our ultimate resolution of this case, we are not faced with this issue.

15

*Johnston, supra,* 113 Cal.App.4th at p. 1306; *People v. Craney* (2002) 96 Cal.App.4th 431, 439-440.)

## III. The Trial Court Did Not Err in Concluding the Evidence was Insufficient as Matter of Law

We turn to the substantive issue—did the trial court err in finding the evidence was insufficient as a matter of law. We conclude it did not.

*Standard of Review*

In general, we review a dismissal under section 1385 for an abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786.) Yet, we review the underlying basis for the ruling—the conclusion that section 1111 barred the convictions because accomplice testimony was not corroborated as a matter of law—de novo. (*Ibid.*) We have concluded the trial court applied the substantial evidence test in dismissing the case for insufficient evidence as a matter of law. The court determined, without weighing the evidence and viewing the evidence in the light most favorable to the judgment, whether there was sufficient evidence to permit a rational jury to convict. (*Hatch, supra,* 22 Cal.4th at p. 272.) The court's determination was a legal conclusion, not a factual finding, thus we review the determination de novo. (*People v. Rowe* (2014) 225 Cal.App.4th 310; *People v. Harris* (2014) 224 Cal.App.4th 86, 89; *People v. Dobkin* (1946) 74 Cal.App.2d 269, 272-273 [when on appeal it is argued that conviction was had upon uncorroborated accomplice testimony, it is equivalent to argument that verdict is contrary to law and the evidence, and " 'this is always a legal question.' "].) The question is whether there was evidence to corroborate Ahumada's testimony that was legally sufficient. " ' "The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime." ' [Citation.]" (*People v. Williams* (2013) 56 Cal.4th 630, 678-679 (*Williams*).) As the trial court was required to do, we make this determination without weighing the evidence and viewing the evidence in the light most favorable to the judgment.

16

*Corroboration of Accomplice Testimony*

Section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Although corroborating evidence is required, it " 'may be slight, entirely circumstantial, and entitled to little consideration when standing alone. [Citations.] It need not be sufficient to establish every element of the charged offense or to establish the precise facts to which the accomplice testified. [Citations.] It is "sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 95.) The corroborating evidence must tend to connect the defendant with the crime, " ' "without aid from the accomplice's testimony." ' " (*Williams, supra*, 56 Cal.4th at p. 679.)

Here, aside from Ahumada's testimony, the evidence relating to defendant was: 1) defendant was in the same gang as the victim and Ahumada; 2) the gang—which had over 400 members —was experiencing frequent "in house" murders; and 3) at some time after 11:00 p.m., Lisa heard a banging noise at her house; a few hours later, between 2:00 and 3:00 a.m., she saw defendant in her garage, along with Garivay, Ahumada, and Renteria.

This evidence failed to tend to connect defendant to Schubert's murder, or to a conspiracy to commit murder. The evidence showed defendant belonged to a gang in which unspecified members killed other members, for unspecified reasons, and he was in the company of one admitted perpetrator, Ahumada, at least three hours after the murder took place. Yet " 'it is insufficient corroboration merely to connect a defendant with the accomplice or other persons participating in the crime, but evidence independent of the testimony of the accomplice must tend to connect a defendant with the crime itself, and not simply with its perpetrators. It is not with the thief that the connection must be had but with the commission of the crime itself.' " (*People v. Robinson* (1964) 61 Cal.2d 373, 400, fn. omitted.) The non-accomplice testimony in this case established only that

17

defendant had a general connection to the victim and other perpetrators—shared gang membership—and he was seen associating with the other perpetrators after the murder, away from the crime scene. While "[t]he relationship of the men and all of their acts and conduct may be considered in determining whether there are corroborating circumstances[,]" (*People v. Henderson* (1949) 34 Cal.2d 340, 343), here there was no evidence about defendant's acts or conduct, except that he was with at least one admitted perpetrator, hours *after* the crime. (See e.g., *People v. Lloyd* (1967) 253 Cal.App.2d 236, 241-242 [defendant's physical presence with narcotic, in the presence of accomplice who was a "narcotic violator" was not sufficient corroboration; proof of mere presence at scene and opportunity to commit offense are not sufficient on their own].)

As the People point out, other aspects of Ahumada's testimony were corroborated by independent evidence. The problem is that none of that evidence tended to connect *defendant* to the crimes.[8] This evidence consisted of Margaret's and Raquel's testimony that Ahumada came to the door and Schubert left with him; soon after Schubert left, Margaret and Raquel heard gunshots; Margaret and Raquel saw one or two people running up the nearby hill; Schubert was found in the location Ahumada described; Lisa heard noises consistent with someone entering her home and later saw the group together, talking; and Lisa testified she drove Ahumada to West Covina the day after the murder. This evidence corroborates portions of Ahumada's account of the murder.[9] But the

---

[8]    The parties' arguments on appeal do not distinguish between the evidence needed to corroborate Ahumada's testimony relevant to the crime of murder, and the evidence needed to corroborate Ahumada's testimony relevant to the crime of conspiracy to commit murder. Indeed, the People cite *People v. Robinson, supra,* 61 Cal.2d at page 397, for the proposition that "the test for sufficiency of the corroborating evidence to prove conspiracy in the first instance is no different from that required to prove any other crime."

[9]    We note that the independent evidence did not completely corroborate Ahumada's testimony, and in parts directly contradicted it. For example, Ahumada testified that he, defendant, and Garivay ran up a hill and to a waiting car; Margaret and Raquel testified they saw one or two people running away, not three. Lisa testified on cross-examination that when she first heard noises some time after 11:00p.m., Garivay was with her in bed.

18

standard is that "corroborating evidence is sufficient, if without aid from accomplice testimony, it ' " '*tends to connect the defendant with the commission of the offense* in such a way as reasonably may satisfy a jury that the accomplice is telling the truth.' " ' [Citations.]" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1022 (*Vu*), italics added; but see *People v. Martinez , supra,* 132 Cal.App.3d 119, 150 (dis. opn. of Staniforth, J. [arguing statute's legislative purpose would be served by allowing the requisite corroborative evidence to refer to the accomplice's testimony to be meaningful; "The fact that the accomplice has told the truth about some aspects of the crime is some evidence that he can be believed as to other aspects . . . . especially where . . . the accomplice's testimony is highly detailed and verified in every respect"].)

Without aid from Ahumada's testimony, none of the above additional corroborating evidence tends to connect defendant with the murder or a conspiracy to murder. Instead, the additional evidence only corroborates that Schubert was shot to death, Ahumada was involved, and after the murder Ahumada and other gang members hung out at the Garivay house. Under section 1111, this is not enough because corroboration "is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (§ 1111; *People v. Martinez, supra,* 132 Cal.App.3d at p. 133.)

---

This was inconsistent with Ahumada's testimony that Garivay was at the apartment complex, shot Schubert, then went with the others to the Garivay house. Ahumada testified he stayed at the Garivay home for two days after the shooting; Lisa testified she drove him to West Covina the day after the murder. Lisa testified she saw Ahumada with a gun; Ahumada denied he left the Garivay house with any kind of firearm. Lisa also testified she heard Ahumada talking on his cell phone during the drive and relating details about the murder; Ahumada denied having any telephone conversation during the drive. There was evidence that Schubert's body was found on the ground and part of his skull was missing and brain matter could be seen, but no evidence describing the ammunition or firearms that were or might have been used in the shooting, or how many times it appeared Schubert was shot. Ahumada did not testify that defendant or Garivay shot Schubert in any particular body part (i.e., he did not testify defendant or Garivay shot Schubert in the head).

19

Although it is well established that the evidence needed to corroborate an accomplice's testimony need be only "slight," and may be circumstantial and entitled to little consideration when considered alone, relevant caselaw does not support the People's position that the corroborating evidence in this case met even that low standard. For example, in a recent case, *Manibusan,* the defendant was convicted of murder and attempted robbery. (*Manibusan, supra,* 58 Cal.4th at pp. 46-47.) Two victims were shot dead and a third was severely injured by a gunshot to the head. (*Id.* at p. 47.) Defendant argued the trial court erred in failing to give accomplice testimony instructions with respect to two witnesses. Our high court found any error was harmless because there was "ample corroborating evidence" from non-accomplice witnesses. (*Id.* at p. 96.) This included testimony that in the early morning hours after the crimes, defendant arrived at a witness's house, he seemed "antsy," and he placed a gun in the trunk of the witness's car; the gun was the same type of gun later identified as the murder weapon; later that day the same witness saw the defendant make a gesture indicating he was responsible for the murders; soon after the shootings, a family friend found the defendant together with two other people, including one known accomplice; a search of the family friend's house a few days later revealed a box of bullets under the couch in the area where the defendant had sat the morning after the shootings; the bullets were of the same caliber as bullets linked to the shootings; the family friends found a torn, black glove in the trash at their house; and police later recovered a matching glove at another witness's house where the defendant had been staying before the shootings. (*Id.* at pp. 95-96.)

None of this evidence directly implicated the defendant. But it tended to connect him to the crimes. The evidence was not only that the defendant was in the presence of the accomplice soon after the shootings, but also circumstantially linked him to a firearm like the murder weapon and its ammunition. There was also independent evidence about the defendant's demeanor after the shootings. (See also *People v. Hayes* (1999) 21 Cal.4th 1211, 1272 [corroborating evidence included non-accomplice testimony that defendant showed unusual interest in the discovery of the victim's skull].) In this case, there was no similar corroborating evidence. The evidence that defendant was a member

20

of a large gang in which there were in-house killings, and he was seen with the accomplice hours after the murder, did not tend to connect him to the murder in such a way that it could reasonably satisfy the jury that Ahumada was telling the truth about defendant's involvement in the crimes.

In *Vu, supra,* 143 Cal.App.4th 1009, the independent corroborating evidence established the defendant's motive, opportunity to commit the crime, and it discredited the defendant's alibi. (*Id.* at p. 1022.) The case involved a gang-related shooting. The defendant was a gang member. He was charged with the fatal shooting of a man at a café that was a hangout of the rival gang. (*Id.* at pp. 1014-1015, 1025.) Although no evidence independent of accomplice testimony placed defendant at the scene of the crime or directly implicated him, there was evidence of motive: a gang member who had been the defendant's closest friend was killed by the rival gang two years earlier, and there was evidence that gangs typically seek revenge. (See also *People v. Bunyard* (1988) 45 Cal.3d 1189, 1206 [non-accomplice evidence that defendant had repeatedly offered to pay another person to kill his wife corroborated accomplice's testimony that defendant solicited him to kill his wife].) A non-accomplice witness saw the defendant with other gang members before the murders; the witness also saw a car at the same location that was of the same make, color, and model as a car found at the crime scene. (*Vu,* at pp. 1014-1016, 1019, 1022.) In addition, a non-accomplice witness's testimony and cell phone records contradicted the defendant's statements to police about where he had been at the time of the shootings. (*Id.* at pp. 1022-1023.) The court concluded this evidence was sufficient to corroborate accomplice testimony inculpating the defendant.

In contrast, here there was no analogous evidence indicating defendant had a motive to murder Schubert. While in *Vu* there was evidence that the defendant's gang was looking to retaliate against a rival gang, and the gang member who had been killed was the defendant's closest friend, in this case there was only evidence that in the over 400-person gang, there were frequent in-house gang murders. This evidence did not establish or even tend to establish that defendant had a motive to kill Schubert or to conspire to kill him. Indeed, other than the fact of shared gang membership, there was no

21

evidence whatsoever regarding any relationship between defendant and Schubert. Similarly, there was no independent evidence regarding defendant's whereabouts before or during the time of the shooting that would indicate he had the opportunity to commit the murder or participate in a conspiracy.

*People v. Szeto* (1981) 29 Cal.3d 20 (*Szeto*), upon which the *Vu* court relied, is similarly illustrative in contrast. *Szeto* also involved a gang-related crime. An accomplice testified that he and other perpetrators opened fire on patrons in a crowded restaurant, killing and wounding several people. (*Id.* at p. 26.) According to the accomplice, after the shooting, he and the other gang members went to the house of an uninvolved couple. The next morning, the defendant brought the gang members food. After others sawed up the guns used in the shooting, the defendant put them in his car, he and the accomplice drove to a specific location, and the defendant dumped the guns into the San Francisco bay. The defendant told the accomplice he was familiar with the area where they would dispose of the weapons because he had worked at a nearby restaurant. (*Id.* at pp. 27-28.)

On appeal, the defendant asserted the accomplice's testimony was not sufficiently corroborated. The court found the following independent corroborating evidence was sufficient: the defendant was a member of the same gang as the killers; for several years the defendant's gang had an active rivalry with another gang; the rivalry had led to 50 murders and assaults and further retaliation; two months before the shooting, a member of the defendant's gang was killed in a battle between the two gangs; the defendant attended the funeral of the slain gang member; thus the defendant had a motive to help his fellow gang members gain revenge upon the rival gang; one independent witness testified the defendant brought food to the house the morning after the shooting; another independent witness testified someone resembling the defendant brought food; defendant had been employed at the restaurant the defendant mentioned to the accomplice; the homeowner testified there were guns in a closet in his house the night before the shooting but they were gone the following evening. (*Szeto,* at pp. 28-29.)

The *Szeto* court concluded this independent evidence reasonably tended to connect the defendant with the crimes. Although *Szeto*, like this case, involved gangs and a gang-related crime, there is a significant difference. In *Szeto*, there was evidence of a specific gang-related motive that served to corroborate the accomplice's testimony about the defendant's involvement in the crime. In contrast, in this case the independent gang evidence failed to suggest defendant had a motive to kill Schubert—all of the parties involved were members of the same over 400-person gang, and the gang frequently experienced "in house" murders. Unlike evidence of a gang-related motive, such as the gang rivalries and motives for revenge present in *Szeto* and *Vu*, the evidence here did not reasonably tend to connect defendant to the murder of Schubert, or the conspiracy to murder. Without any more evidence regarding the intra-gang killings, that such killings often occurred does not reasonably suggest a motive for the Schubert killing, and does not suggest that defendant in particular had a motive to participate in the Schubert killing. Further, in *Szeto*, besides the evidence showing the defendant associated with the perpetrators after the crime, non-accomplice evidence corroborated the accomplice's testimony that the defendant was familiar with the location where they disposed of the crime weapons because he had worked at a nearby restaurant, and the weapons were found in that location. (*Szeto*, at pp. 27-28.)

Independent evidence that corroborates portions of the accomplice's testimony, but which does not tend to connect the defendant to the crime, is not enough by itself to constitute sufficient corroboration under section 1111. As explained in *People v. Tewksbury* (1976) 15 Cal.3d 953 (*Tewksbury*), "[a]ccomplice testimony is suspect because, like hearsay, it too may be unreliable. '[E]xperience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity.' [Citations.] In addition to being derived from a suspect source accomplice testimony is frequently cloaked with a plausibility which may interfere with the jury's ability to evaluate its credibility. ' "[A]n accomplice is not merely a witness with a possible motive to tell lies about an innocent accused but is such a witness peculiarly

23

equipped, by reason of his inside knowledge of the crime, to convince the unwary that his lies are the truth." ' [Citations.]" (*Tewksbury*, at p. 967; see also *In re Christopher B.* (2007) 156 Cal.App.4th 1557, 1561 [accomplice testimony "frequently is cloaked with plausibility because the accomplice has firsthand knowledge of the facts of the crime and can weave a convincing story."].)

For these reasons, and as prescribed by section 1111, to be sufficient, evidence corroborating the accomplice's testimony must tend to connect the defendant to the crime. Evidence that merely corroborates that the accomplice is telling the truth that a crime happened, or that the accomplice knows details of the crime unconnected to the defendant, would do little to mitigate the distrust such testimony warrants because of the accomplice's motivation to inculpate another person. (*In re Miguel L.* (1982) 32 Cal.3d 100, 108 [accomplice has strong motive to fabricate testimony which incriminates innocent persons or transfers responsibility for crime to others and minimizes his participation in the offense]; *Vu, supra,* 143 Cal.App.4th at p. 1023 [accomplice testimony is viewed with caution and suspicion because it comes from a tainted source; accomplice may have testified in the hope or expectation of leniency].)

In *Tewksbury*, the court explained that the People may "vest the witness's testimony with reliability" by producing corroboration. The evidence may prove "factual matters which fall far short of establishing corroboration beyond a reasonable doubt," and " 'may be slight and entitled to little consideration when standing alone,' " but it "must connect the accused with the commission of the crime charged." (*Tewksbury*, at pp. 968-969.) "Such independent evidence ' "need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it *does not require interpretation and direction from the testimony of the accomplice* yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth . . . ." [Citations.]' [Citations.]" (*People v. Davis* (2005) 36 Cal.4th 510, 543, italics in original.) As the statute itself explicitly states:

" '[T]he corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.' "[10]

Thus, even in cases where the reviewing court has included in a recitation of corroborating evidence testimony that relates only to details or the circumstances of the crime, courts have found such evidence sufficient *in addition* to other evidence tending to connect the defendant to the crime. For example, in *People v. Henderson, supra,* 34 Cal.2d 340, the court found there was sufficient evidence to corroborate the testimony of an accomplice in a case arising out of an attempted robbery. (*Id.* at p. 342.) The court identified non-accomplice evidence corroborating the accomplice's testimony regarding the number, color, and type of guns he and the defendant used, and the color and design of the stocking caps they wore over their faces. These details concerned the circumstances of the crime and not the defendant. However, the court also identified evidence that the accomplice and the defendant were together most of the day before the attempted robbery, including around three hours before the crime; the accomplice's sister

---

**10** The People offer a quote from *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1128, which includes the sentence: " ' "Corroborating evidence is sufficient if it substantiates enough of the accomplice's testimony to establish his credibility. [Citation.]" ' " Although if taken out of context this line would seem to support the idea that corroboration of the accomplice's testimony regarding the details of the crime alone might be enough to satisfy section 1111, in context it is clear this sentence did not alter the rule that the evidence " ' " 'must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime," ' " ' and " 'the prosecution must produce independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime charged. [Citation.]' " (*Rodrigues*, at p. 1128.) We also note that the phrase from *Rodrigues* first appeared in *People v. Knight* (1980) 111 Cal.App.3d 201, 205-206 (*Knight*), which cited, as authority, *People v. Lyons* (1958) 50 Cal.2d 245 (*Lyons*), disapproved on another ground as stated in *People v. Carrera* (1989) 49 Cal.3d 291, 321. However, the *Knight* court also indicated that evidence under section 1111 "is sufficient if it tends in some degree to implicate the defendant [citation]." (*Knight*, at p. 205.) Similarly, *Lyons* explained the requirements of section 1111 as many other cases have; the court noted the evidence "must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged." (*Lyons,* at p. 257.)

25

sold a gun to the defendant the day before the crime; and the gun sold to the defendant was of the same type used in the crime, according to a witness familiar with firearms. (*Id.* at pp. 345-346.) The court concluded it was "satisfied that the cumulative effect of the testimony of the women companions of the two men, the testimony of [the accomplice's] sister and the testimony of the victims in the cafe, none of whom could be deemed accomplices, point sufficiently to the establishment of the fact that the defendant was the other participant in the crime, and that the code requirements of evidence tending to connect the defendant with the commission of the crime have been sufficiently met." (*Id.* at p. 346.)

Similarly, in *People v. Abilez* (2007) 41 Cal.4th 472, the defendant argued there was insufficient evidence to corroborate the accomplice's testimony inculpating him as the assailant in a sodomy and murder case. The court disagreed because "[a]ll of the critical aspects [of the accomplice's] testimony were corroborated." (*Id.* at p. 505.) This included the accomplice's testimony that he saw the defendant straddling the victim and he saw a white cloth around the victim's neck. Independent evidence established that the victim was found with a white sock wrapped around her neck. However, there was also independent evidence that on the evening of the crime, the defendant and the accomplice visited the victim; a non-accomplice witness heard the defendant and the victim arguing and heard the victim scream; the same witness heard someone start the victim's car and drive away; other witnesses testified that in the days before the murder they heard the defendant state he wished to kill the victim. (*Id.* at pp. 505-506.) The court found this evidence was sufficient and distinguished cases in which "the purported corroborating evidence 'did nothing more than show "the commission of the offense or the circumstances thereof[,]" ' " or in which "the only evidence tending to corroborate an accomplice's testimony was proof the defendants were present at the scene." (*Id.* at p. 506.)

Likewise, in *Williams,* accomplices testified that the defendant planned to scam the victims in a fraudulent drug transaction by trading fake money for drugs, and, during the transaction the defendant shot and killed both victims. According to the accomplices, defendant set up the transaction by telephone calls to the victims at their work place; at a meeting place, one of the accomplices took the victims' wallets; after the defendant shot the victims, he and the accomplices dragged the bodies to the garage and into a truck; and the defendant and one of the accomplices subsequently fled California. (*Williams, supra,* 56 Cal.4th at pp. 637-642.)

The court found sufficient corroborating evidence in part from testimony of a witness who overheard the victims say they were going to a bar for a drug deal, and evidence that the victims' wallets were found in a kitchen cabinet at the crime scene. But these details were combined with other evidence that specifically tended to connect the defendant to the crime, such as telephone records between the defendant's home and the victims' place of employment; the testimony of a witness who saw the victims talking to someone resembling the defendant; neighbors heard gunshots and saw the defendant and accomplices exiting the apartment where the crimes occurred; defendant's pager was found at the crime scene; and the defendant's fingerprints were found in the room where the victims were shot and on the truck to which the victims' bodies had been dragged. In addition, there was independent evidence of defendant's flight after the crimes, which supported an inference of consciousness of guilt. (*Id.* at p. 679.) While evidence corroborating the circumstances or details of the crime was included in the analysis, there was also evidence tending to connect the defendant to the crimes.

The same was true in *People v. Thompson* (2010) 49 Cal.4th 79, in which an accomplice testified the defendant robbed and shot the victim at a lake. The court found there was sufficient evidence to corroborate the accomplice's testimony. Some of the independent evidence corroborated the general details of the crime, such as what the defendant and the victim ate on the night of the murder, the state of dress of the victim when his body was found, and the presence of drugs in the victim's blood, which confirmed the accomplice's testimony that he, the defendant, and the victim, had used

27

drugs the night of the murder. (*Id.* at p. 124.) However, there was also non-accomplice testimony that there was a connection between the defendant and the victim; the defendant and the victim left the victim's cousin's house together, but the defendant returned without the victim and gave suspicious accounts about the victim's absence; the defendant and the victim were together the night of the murder at another witness's house and they left together, but after that night the defendant drove the victim's car and was seen burning papers and cleaning a gun; and witnesses testified to defendant's incriminating statements about a person floating in the lake. (*Id.* at pp. 88-91, 124.)

Thus, corroborated details about the crime generally may form part of a picture indicating the jury may be satisfied that the accomplice is telling the truth. But, under the statute, the evidence must do more than corroborate the accomplice's testimony establishing a crime was committed or the circumstances of the crime. The evidence must "tend to implicate the defendant by relating to an act that is an element of the crime. It need not by itself establish every element, but must, without aid from the accomplice's testimony, tend to connect the defendant with the offense." (*People v. Nelson* (2011) 51 Cal.4th 198, 218.) In this case, when the evidence corroborating Ahumada's testimony about the circumstances of the crimes is combined with the evidence relating to defendant, there is still nothing that tends to implicate defendant by relating to an act that is an element of the crimes. (*Williams, supra,* 56 Cal.4th at p. 679.) Under section 1111, the convictions could not stand.

## IV.    The Trial Court Did Not Err in Dismissing the Case

The People further contend the trial court erred in dismissing the case. The People argue the trial court granted the motion for a new trial under section 1181, and under that statute there is no "acquittal as a matter of law." The People also argue the court could not have dismissed the case under section 1385, because it failed to utilize the appropriate substantial evidence test, and failed to expressly view the evidence in the light most favorable to the prosecution.

28

As explained above, we must reject these arguments. For double jeopardy purposes, it is the substance of a ruling rather than the title that determines whether it is an acquittal that bars retrial. As explained in *Evans*, United States Supreme Court "cases have defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense . . . Thus an 'acquittal' includes a 'ruling by the court that the evidence is insufficient to convict,' a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g] which relate[s] to the ultimate question of guilt or innocence.' [Citation.]" (*Evans, supra,* 133 S.Ct. at pp. 1074-1075.)

And in *Burks,* the court held that a court's determination that evidence offered at trial was legally insufficient to support a conviction implicates double jeopardy principles and bars retrial, even if the defendant has sought a new trial as a remedy. (*Burks, supra,* at p. 17; see also *People v. Trevino* (1985) 39 Cal.3d 667, 694, 698-699, disapproved on other grounds by *People v. Johnson* (1989) 47 Cal.3d 1194, 1221 [trial court erroneously denied section 1118.1 motion but granted new trial for insufficient evidence as a matter of law, second court subsequently discharged defendant on double jeopardy grounds; double jeopardy barred retrial].) Here, despite defendant's request for a new trial under section 1181, the trial court concluded the People failed to satisfy the requirements of section 1111. Since the court ruled the Ahumada testimony was not sufficiently corroborated, that testimony was not substantial evidence upon which a conviction could be sustained. Thus the court found the evidence insufficient as a matter of law. This finding was one of a failure of proof. Even though defendant brought the motion under section 1181, and the court even granted a new trial, the fact remains that all indications—express and implied—are that the trial court found insufficient evidence as a matter of law.

Moreover, assuming this ruling was essentially a discretionary judicial dismissal under section 1385, under *Hatch*, the trial court was not required to expressly refer to the substantial evidence standard, or to use any particular language in the ruling. The trial court's statement that it found insufficient evidence "as a matter of law," and the court's

explicit reference to *Hudson* is clear enough for us to "confidently conclude" the court "viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict." (*Hatch*, at p. 273.)

Indeed, the result in this case is consistent with the court's reasoning in *People v. Falconer* (1988) 201 Cal.App.3d 1540 (*Falconer*). In *Falconer*, the defendant moved for a judgment of acquittal at the end of the prosecution's case on the ground that accomplice testimony was not sufficiently corroborated. (*Id.* at p. 1542.) After the jury returned a guilty verdict, the defendant appealed. The appellate court concluded there was no non-accomplice evidence tending to connect the defendant to the crime, thus the accomplice testimony was uncorroborated as a matter of law. The court then concluded an acquittal was necessary. The court explained: "At the close of the prosecution's case-in-chief, the trial court denied [the defendant's] motion for judgment of acquittal. (See §§ 1111, 1118.1.) By failing to produce any corroboration during its case-in-chief, the prosecution failed to establish a prima facie case. Therefore, the defendant's motion to acquit was improperly denied. A reversal is required but is not an adequate remedy, as a retrial would result. [Citations.] In this situation, a retrial would violate the prohibition against double jeopardy. [Citation.] When Falconer made his motion, he was entitled to a judgment of acquittal." (*Falconer*, at p. 1544.)

Similarly, in *People v. Belton* (1979) 23 Cal.3d 516 (*Belton*), our high court concluded the trial court erred in denying the defendant's section 1118 motion for an acquittal because the only evidence linking the defendant to the crime was uncorroborated accomplice testimony, which was insufficient to convict. (*Id.* at pp. 520, 526-527.) The court then concluded that while a reversal of the judgment was required, "a general reversal is not adequate, since a retrial would result. (Pen. Code, § 1262.) Such a retrial would allow the prosecution to accomplish by indirection that which this court holds it cannot do directly. To be consistent with the Legislature's intent in enacting section 1118, this court cannot afford the prosecution, having once failed to prove a prima facie case, a second opportunity to present the evidence against a defendant. When appellant moved pursuant to section 1118 in the present case, he was

30

entitled to a judgment of acquittal." (*Id.* at p. 527, fn. omitted.) In a footnote, the court cited *Burks* for the proposition that the double jeopardy clause " 'forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.' " (*Id.* at p. 527, fn. 13, citing *Burks, supra,* 437 U.S. at p. 11; see also *People v. McRae* (1947) 31 Cal.2d 184, 187, abrogated by statute on other grounds as stated in *People v. Tobias* (2001) 25 Cal.4th 327, 337 [Section 1111 is " 'in addition to the requirement of the doctrine of reasonable doubt . . . [and] in effect says that even though the jury are convinced to a moral certainty that the defendant is guilty, yet they must acquit him if the testimony of the accomplice is not corroborated by other evidence, which connects or tends to connect him with the offense charged.' [Citation.]".)

The procedural posture of *Falconer* and *Belton* is different from this case, but their reasoning remains applicable. We are not reviewing the trial court's denial of defendant's section 1118.1 motion, and defendant nominally moved for a new trial. But the trial court's ruling was quite clearly based on section 1111 and a determination that the prosecution failed to produce corroborating evidence "as a matter of law." Under *Burks*, that defendant sought a new trial is not dispositive. "[A]ppellate courts 'must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' [Citation.] If a trial court rules the evidence is insufficient as a matter of law, then the ruling bars retrial even if it is patently erroneous or the court has no statutory authority to make it." (*Hatch, supra,* 22 Cal.4th at pp. 270-271.) The trial court found the prosecution failed to prove its case, and, as such, defendant could not be retried. Dismissal was required.

## DISPOSITION

The trial court orders are affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.

FLIER, J.