Filed 4/20/20

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C084302 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CF04722) |
| v. | |
| RAYMOND DOUGLAS MAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, James F. Reilley, Judge. Affirmed as modified.

Jyoti Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, IIA, III, and IV of the Discussion.

Following a jury trial, defendant Raymond Douglas May was found guilty of possessing an assault weapon and a machine gun based on his possession of a single AK-47 assault rifle while guarding a marijuana plantation. He was sentenced to probation, which included an electronic search condition. On appeal, defendant contends there was a lack of sufficient evidence corroborating his accomplice's testimony and demonstrating he knew of the firearm's illegal character. He further alleges instructional error, in that the accomplice instruction should have included language specifying that the accomplice testimony needs to prove more than defendant's mere presence or access to the firearm. Finally, he asserts the electronic search condition imposed as part of his probation fails under *Lent*. (*People v. Lent* (1975) 15 Cal.3d 481.) We agree defendant's electronic search condition must be stricken, but otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Offense*

In early October 2016, Antonio Alanis-Rodriguez volunteered to work on a marijuana plantation in Butte County to learn about the emerging market. He arrived on October 3 and met employees of the plantation, including defendant, although he did not learn any of their names. Alanis-Rodriguez was shown around the 165-acre property, which had eight grow sites containing over 490 plants in total. Five of the grow sites were on the southern portion of the property and three were on the northern portion. What appeared to be a main campsite, consisting of multiple trailers outfitted with sleeping quarters, was located on the southern side of the property. There was also a small building with a trimming machine used for marijuana processing on the north side of the property.

After touring the plantation, Alanis-Rodriguez was told to set up his tent near a grow site on the northern side of the property. The site was a third of a mile away from the main campsite. Someone asked Alanis-Rodriguez whether he would take on a tent

mate, and then defendant was assigned to bunk with him. Once both men were in the tent, somebody gave an AK-47 rifle to defendant through the opening of the tent. Alanis-Rodriguez expressed discomfort but defendant assured him he would remove the gun from the tent and put it in a truck in the morning. Alanis-Rodriguez had never seen a gun like the AK-47 before but said it looked like the guns he saw in video games. Alanis-Rodriguez asked defendant about the job expectations for the next day, and defendant told him they were going to water the plants.

When the men woke up the next morning, defendant put the AK-47 in a nearby parked truck as promised, and left the passenger side doors open. [1] The truck was registered to Juan Paises-Hernandez. The men walked to another grow site before returning to the grow site they had slept near. Upon their return, defendant and Alanis-Rodriguez saw Butte County Sheriff's deputies executing a search warrant of the marijuana plantation. Officers discovered the AK-47 on the backseat of the truck parked at the grow site defendant and Alanis-Rodriguez were assigned to guard. They found identifying information of both defendant and Alanis-Rodriguez inside the tent. A search of defendant did not yield keys to the truck and defendant was never seen driving the truck.

There were tents set up at the other grow sites on the plantation. A shotgun was also found on the property but not confiscated because it was a legal firearm. Paises-Hernandez's belongings were found in a trailer at the main campsite. Both defendant and Alanis-Rodriguez, along with Paises-Hernandez were arrested. Alanis-Rodriguez pled no contest to possession of an AK-47 and testified against defendant.

_____

[1]      Alanis-Rodriguez testified all doors to the truck were closed at the time Detective James Marshall executed the search warrant, while Detective Marshall testified they were open. As we must, we interpret the facts in the light most favorable to the judgment. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)

## II

### *Expert Testimony*

Detective Marshall testified as an expert about the marijuana cultivation business. It is common for employees on a marijuana plantation to sleep near the grow sites to ensure the product is protected. To this extent, it is also common to be armed while guarding these sites. In fact, Detective Marshall has come across fully automatic weapons at marijuana grow sites at least 75 times in his over 20-year career. It is also common for more than one employee to guard a single grow site within a larger plantation.

Detective Marshall believed Paises-Hernandez was in a management position on the marijuana plantation. He based this opinion on Paises-Hernandez's statements and the fact that the vehicle being used on the plantation was registered to him. Usually, low-level employees do not bring their own vehicles to the site. Further, it appeared Paises-Hernandez slept in one of the trailers at the main campsite, which is typical for management because the trailers provide better sleeping quarters than a tent. Management usually entrusts experienced employees to drive the trucks and possess weapons. It is unusual to trust new employees with vehicles or weapons.

Detective Benjamin Cornelius testified as an expert in firearms. He began his testimony by showing the jury a semiautomatic rifle from his own gun collection. He explained the difference between semiautomatic and fully automatic firearms. He then showed the jury the confiscated AK-47, which had a collapsible stock to make it more compact, a flash suppressor to minimize the explosion from the weapon when fired, a detachable high-capacity magazine holding 30 rounds, and a three-position selector switch. A selector switch usually allows a person to switch the weapon's setting from safety to semiautomatic fire; however, the seized AK-47 allowed a user to switch the weapon's setting from safety to fully automatic fire and also to semiautomatic fire.

Although Detective Cornelius could not tell simply by looking at the AK-47 that it was fully automatic, the presence of the three-position selector switch alerted him to the possibility. Upon closer inspection, he realized the gun had been modified to have a third position allowing for fully automatic fire. He compared the features of the seized AK-47 to his semiautomatic rifle and noted his semiautomatic rifle was missing the collapsible stock, flash suppressor, and large-capacity magazine.

DISCUSSION

I

*Sufficient Independent Evidence Connected Defendant To The Crime,*

*Thus Corroborating Alanis-Rodriguez's Testimony*

Defendant contends there was insufficient independent evidence connecting him to the crime to corroborate Alanis-Rodriguez's testimony that he was in possession of the AK-47, and thus his convictions cannot stand. We disagree.

"An accomplice's testimony must be corroborated by independent evidence which, without aid or assistance from the accomplice's testimony, tends to connect *the defendant* with the crime charged. [Citations.] To determine if sufficient corroboration exists, we must eliminate the accomplice's testimony from the case, and examine the evidence of other witnesses to determine if there is any inculpatory evidence tending to connect the defendant with the offense. [Citations.] '[C]orroboration is not sufficient if it requires interpretation and direction to be furnished by the accomplice's testimony to give it value. . . .' [Citation.] It must do more than raise a conjecture or suspicion of guilt, however grave. [Citations.] On the other hand, unless a reviewing court determines that the corroborating evidence should not have been admitted or that it could not reasonably tend to connect a defendant with the commission of a crime, the finding of the trier of fact on the issue of corroboration may not be disturbed on appeal." (*People v. Falconer* (1988) 201 Cal.App.3d 1540, 1543.)

5

"Although corroborating evidence need only be slight and may be entitled to little consideration when standing alone [citations], it is not sufficient to merely connect a defendant with the accomplice or other persons participating in the crime. The evidence must connect the defendant with the crime, not simply with its perpetrators. [Citations.] Likewise, it is insufficient to show mere suspicious circumstances." (*People v. Falconer*, *supra*, 201 Cal.App.3d at p. 1543.) The evidence need not corroborate every fact to which the accomplice testifies. (*People v. Davis* (1962) 210 Cal.App.2d 721, 730.) "The corroborating evidence is sufficient if, without aid from accomplice testimony, it ' " 'tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth.' " ' " (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1022.)

Without Alanis-Rodriguez's testimony the evidence was that marijuana plantations have a hierarchy -- with managers sleeping in comfortable sleeping quarters and providing supplies, while lower-level employees guarded the grow sites in tents. Paises-Hernandez was a manager at this plantation, evidenced by his belongings in one of the trailers and his ownership of the truck. In Detective Marshall's experience, it is common for the guards of grow sites to be armed to protect the plants. This plantation likely had that practice considering another weapon was found on the property. Defendant shared a tent with Alanis-Rodriguez near a grow site. When Detective Marshall arrived at the grow site, there was a truck parked near the tent with both passenger side doors open and an AK-47 on the backseat. He encountered only defendant and Alanis-Rodriguez at that grow site.

This evidence was sufficient to corroborate Alanis-Rodriguez's testimony in that it tends to connect defendant to the commission of the offense. (*People v. Vu*, *supra*, 143 Cal.App.4th at p. 1022.) Defendant's belongings were found in the tent near the grow site suggesting he stayed the night and guarded the plants at that grow site. As the expert testified, employees who guard grow sites commonly use weapons. And a weapon was

found at this grow site that had assaultive and machine gun characteristics. While the weapon was found in a truck registered to someone other than defendant, the truck was registered to Paises-Hernandez, a manager of the grow site, who likely provided the truck for defendant's use as a lower-level employee at the grow site, along with the gun.

Defendant relies on three cases in support of reversal. First, he relies on *People v. Lloyd* (1967) 253 Cal.App.2d 236, 239, which involves a defendant who was convicted of unlawful marijuana possession. The drugs were found in a public place (a bar) near where the defendant was standing, but there was no evidence of his dominion and control other than a statement of an accomplice. (*Id*. at pp. 238-239, 242.) The court reversed the conviction, finding the defendant's presence near the drugs was insufficient independent corroboration to establish the dominion and control element. (*Id*. at p. 242.)

Defendant argues his case is like *Lloyd* because "[t]he corroboration really establishes nothing more than appellant's physical presence at the scene of the crime, in the company of another person who himself admitted to possessing the weapon. . . ." But defendant was not found in a public place like the defendant in *Lloyd*, he was found on a marijuana plantation guarding a grow site -- a place that has much different customs and practices than a public space. As Detective Marshall testified, it is common for marijuana plantation workers to use weapons to guard their plants and evidence supported an inference this plantation prescribed to that custom. The evidence here shows defendant was more than merely present.

Defendant next relies on *People v. Pedroza* (2014) 231 Cal.App.4th 635, in which an accomplice testified that he heard two gun shots, turned and saw Pedroza with a revolver pointed at the victim, and then saw a third person (Garivay) shoot the victim twice with a shotgun. (*Id*. at p. 640.) Pedroza, Garivay, and the accomplice drove to Garivay's house (20 minutes away from the crime scene) where Garivay's girlfriend Lisa also lived. (*Id*. at pp. 639-640.) On appeal from the trial court's acquittal of Pedroza based on its finding there was insufficient corroboration as a matter of law, the Court of

7

Appeal summarized the corroborating evidence connecting Pedroza to the murder charge as follows: "(1) [Pedroza] was in the same gang as the victim and [the accomplice]; (2) the gang -- which had over 400 members -- was experiencing frequent in-house murders; and (3) at some time after 11:00 p.m., Lisa heard a banging noise at her house; a few hours later, between 2:00 and 3:00 a.m., she saw [Pedroza] in her garage, along with Garivay, [the accomplice], and [a third person]." (*Id.* at pp. 643, 647, 651.) The Court of Appeal found the corroborating evidence showed nothing more than a general connection to the victim and other perpetrators, not to the crime itself. (*Id.* at p. 651.)

Defendant argues his case is like *Pedroza* because no evidence corroborated Alanis-Rodriguez's testimony defendant physically possessed the AK-47. However, there need not be any evidence corroborating the accomplice's testimony that defendant physically possessed the gun; there need only be evidence that tends to connect defendant to the possession of the gun. To this end, *Pedroza* is distinguishable because the only corroborating evidence in that case came from someone who was nowhere near the scene of the crime and who saw the defendant hours after the crime was committed. (*People v. Pedroza*, *supra*, 231 Cal.App.4th at p. 651.) By contrast, the corroborating evidence in this case was the physical evidence discovered at the grow site and expert testimony regarding the customs and practices of marijuana plantations, all of which tended to show defendant possessed an AK-47 and was not merely present near it.

Lastly, defendant points to *People v. Szeto* (1981) 29 Cal.3d 20, as a case unlike his own. There, members of an Asian street gang sought revenge against a rival gang by firing guns into a crowded restaurant where rival gang members were believed to be eating. (*Id.* at p. 26.) Several bystanders were killed. (*Ibid.*) The defendant was convicted of being an accessory to a felon for his role in disposing of the weapons. (*Id.* at pp. 24, 26-27.) An accomplice testified that on the morning after the shooting spree, the defendant brought the killers food, placed the guns in his car, drove to a spot along San Francisco Bay, and threw the guns in the water. (*Id.* at p. 27.)

8

The corroborating evidence established: (1) the defendant was a member of the Joe Boys gang; (2) Joe Boys was a rival of the Wah Ching and Hop Sing gangs, and the rivalry had erupted into warfare; (3) Wah Ching and Hop Sing gang members had killed a Joe Boys gang member; (4) the defendant attended the funeral of the fellow gang member killed by the rival gangs; (5) on the morning after the restaurant killings, the defendant brought food to the house where the killers were staying; and (6) the guns used the previous night were inside the house when the defendant brought the food. (*People v. Szeto*, *supra*, 29 Cal.3d at p. 28.) Our Supreme Court held this testimony established the defendant had a motive and the opportunity to aid the killers and therefore was sufficient corroboration of the accomplice testimony. (*Id.* at pp. 28-29 ["Because the corroborating evidence does tend to connect defendant with the commission of the crimes of which he has been convicted, we must uphold the jury's verdict"].)

Defendant argues his case is different because, whereas five witnesses corroborated the accomplice's testimony related to the defendant's personal involvement, no evidence corroborated he personally possessed the AK-47. Corroborating evidence need only be slight to be sufficient (*People v. Falconer*, *supra*, 201 Cal.App.3d at p. 1543), and nothing in *Szeto* suggests more than one witness's corroborating testimony is required for that finding. To be sure, no witness, other than Alanis-Rodriguez, saw defendant possessing the AK-47. But, as discussed, defendant's belongings were found in the tent near the grow site suggesting he stayed the night and guarded the plants at that grow site. Employees who guard grow sites commonly use weapons. And a weapon was found at this grow site that had assaultive and machine gun characteristics. Accordingly, Alanis-Rodriguez's testimony was sufficiently corroborated.

II

*Sufficient Evidence Supports Defendant's Convictions*

Defendant contends insufficient evidence supports his convictions because no evidence established he knew of the illegal character of the AK-47. We disagree.

9

The principles governing our assessment of defendant's challenge to the sufficiency of the evidence are well settled. "We ' " 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . .' " ' 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks*, *supra*, 3 Cal.5th at p. 57.)

A

*Possession Of An Assault Weapon*

A conviction for possessing an assault weapon requires "knowledge of, or negligence in regard to, the facts making possession criminal." (*In re Jorge M.* (2000) 23 Cal.4th 866, 887 [construing Pen. Code,[2] § 12280, subd. (b), precursor to § 30605].)[3] The prosecution must prove defendant "knew or reasonably should have known the firearm possessed the characteristics" of a prohibited assault weapon. (*In re Jorge M.*, at p. 887.) One who possesses an assault rifle is not exempt from punishment merely because he did not trouble to acquaint himself with the gun's salient characteristics. (*Id.* at p. 888.) Someone with "substantial and unhindered possession" of the assault weapon is expected to know if it is a prohibited model or has features making it prohibited. (*Ibid.*) But "one who was in possession for only a short time, or whose possession was merely constructive, and only secondary to that of other joint possessors, may have a viable argument for reasonable doubt as to whether he or she either knew or reasonably should have known the firearm's characteristics." (*Ibid.*) "[I]n many circumstances a

---

[2]    Undesignated section references are to the Penal Code.

[3]    Former section 12280, subdivision (b) was repealed and reenacted without substantive change as section 30605. (Stats. 2010, ch. 711, § 4 [repealing § 12280]; Stats. 2010, ch. 711, § 6 [adding § 30605].)

trier of fact properly could find that a person who knowingly possesses a . . . firearm reasonably should have investigated and determined the gun's characteristics. The exceptional cases in which the salient characteristics of the firearm are extraordinarily obscure, or the defendant's possession of the gun was so fleeting or attenuated as not to afford an opportunity for examination, would appear to be instances of largely innocent possession that . . . the Legislature presumably did not intend to be subject to felony punishment." (*Id*. at p. 885.)

An AK-47 is an assault weapon. (§ 30510, subd. (a)(1).) The relevant statutory provisions also list characteristics to consider when determining whether a firearm is an assault weapon. These characteristics include a flash suppressor, a high-capacity magazine, a detachable magazine, and a collapsible stock. (§ 30515, subd. (a)(1)(C), (E), (a)(2), (a)(4)(A).)

Given defendant's relative comfort with the weapon in the tent and the length of time he had it there, the jury could have reasonably concluded defendant was not a person in possession of the weapon for a short time or whose possession was merely constructive; but instead, substantial to the point where he should have inspected the weapon to discern its assaultive character. (*In re Jorge M*., *supra*, 23 Cal.4th at p. 888.) The jury was permitted to view the AK-47, with its detachable high-capacity magazine, flash suppressor, and collapsible stock, and compare it to a legal semiautomatic rifle and pictures of a legal shotgun also found on the plantation. By this comparison, the jury could discern for itself whether defendant reasonably should have known the firearm possessed the characteristics of a prohibited assault weapon. An affirmative conclusion is supported by Alanis-Rodriguez, who was alarmed by the weapon's presence and thought it looked like something out of a video game. Thus, sufficient evidence supports defendant's conviction for possessing an assault weapon.

11

# B

## *Possession Of A Machine Gun*

Section 32625, subdivision (a) provides: "Any person . . . who within this state possesses or knowingly transports a machinegun . . . is guilty of a public offense . . . ." (*Ibid.*; 1170, subd. (h)(1).) A machine gun is any weapon that shoots "automatically more than one shot, without manual reloading, by a single function of the trigger." (§ 16880.)

In 1953, the Second District, Division Three, interpreted an earlier version of this law.[4] (*People v. Daniels* (1953) 118 Cal.App.2d 340.) It concluded "the Machine Gun Law" was a strict liability offense. (*Id.* at p. 343.) The court reasoned, "[i]n view of the use of the word 'knowingly' as applied to transportation, we think it conclusive that, as applied to the possession of a machine gun, the Legislature intended that the mere fact of possession should constitute the crime." (*Id.* at p. 345.) Because the statute's language was unequivocal, the court saw "a clear legislative determination that society can best be protected against the evil of possession by a vigorous application of an inflexible rule. No doubt the Legislature felt that possession of a machine gun could hardly be had without knowledge that the object was in fact a machine gun; and that, on the other hand, there may be innocent, unwitting, inadvertent, or unintended acts of transportation." (*Ibid.*)

---

[4] The statute forbid sale, offering for sale, possession or knowing transportation. (Stats. 1933, ch. 450, p. 1170, § 2.) The statute has remained substantially the same since. It was codified in 1953 after the *Daniels* decision as section 12220, which was then amended several times without relevant change. In 2012, it was renumbered to section 32625 as part of the Legislature's effort to make numerous nonsubstantive revisions to the deadly weapons statutes. (§ 16005; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1080 (2009-2010 Reg. Sess.) as amended Apr. 7, 2010.)

In 1984, the First District, Division Four, revisited the issue and determined possession of a machine gun a strict liability crime. (*People v. Corkrean* (1984) 152 Cal.App.3d 35, 38-39.) It thought it a question of statutory construction and rejected the defendant's attempt to analogize the statute to possession of narcotics, where scienter is implied. (*Id.* at p. 38.) It reasoned that in narcotics law, scienter was missing from the statutes altogether, thus it could be consistently read into the statutory language. Here, scienter is specified for one type of conduct (transport) but not another (possession), showing a clear intent to treat these acts differently. (*Id.* at pp. 38-39.) Further, the Legislature knows the law and failed to amend possession of a machine gun to include a knowledge requirement despite having amended the statute for other reasons and other parts of the statutory scheme to include knowledge requirements. (*Id.* at pp. 39-40.)

In 1994, the United States Supreme Court concluded the federal law prohibiting possession of a machine gun was not a strict liability offense despite the fact the statute was silent regarding mens rea. (*Staples v. United States* (1994) 511 U.S. 600 [128 L.Ed.2d 608].) It started with the language of the statute read in light of common law principles favoring mens rea. The Supreme Court questioned whether the presumption of a mens rea was rebutted by express or implied congressional intent to the contrary. It concluded it was not because the statute was silent in that regard. (*Id.* at pp. 605-606, 619 [128 L.Ed.2d at pp. 615-616, 624-625].) It then analyzed whether the presumption could be rebutted because the statute defined a public welfare offense, concluding it did not. (*Id.* at p. 606-619 [128 L.Ed.2d at pp. 616-624].)

In 2000, our Supreme Court decided *In re Jorge M.* after the appellate court's decision to read mens rea into the statute prohibiting possession of an assault weapon. (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 871.) In doing so, the appellate court distinguished *Corkrean* and *Daniels* as having been decided before *Staples* and other decisions limiting the circumstances when the courts may infer a legislative intent to create a strict liability offense. (*In re Jorge M.* (1998) 66 Cal.App.4th 809, 819-821.) Notably, our Supreme Court did not adopt this reasoning, even though it agreed with the

13

appellate court a knowledge requirement was appropriate.[5]  Instead, it followed the analytical framework announced in *Staples.*

First, our Supreme Court determined whether the plain meaning of the assault weapon statute expressly or by necessary implication excluded a knowledge requirement. It concluded the statute was silent.  (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 872.)  It then analyzed whether possession of an assault weapon was a public welfare offense, concluding it was not.  (*Id.* at pp. 872-877.)  In doing so, the court distinguished *Corkrean* and *Daniels* as dealing with a statute containing language of scienter in its prohibition on transportation but not in its prohibition on possession, as opposed to the statute at issue which was completely silent.  (*Id.* at p. 878.)  In a footnote, our Supreme Court cautioned: "Because this case involves only the interpretation of the [Assault Weapons Control Act], we have no occasion to address the interpretation of other weapons laws.  We note, however, that, in addition to potentially significant differences in statutory language, there are other important considerations that come into play when a court is requested to modify an established judicial interpretation of a statute.  (See, e.g., *Patterson v. McLean Credit Union* (1989) 491 U.S. 164, 172-173, [109 S.Ct. 2363, 2370, 105 L.Ed.2d 132] [noting special force of stare decisis considerations in area of statutory interpretation"].)  (*In re Jorge M.*, at p. 877, fn. 7.)

Since *Jorge M.*, our Supreme Court has had occasion to interpret strict liability crimes.  (See *People v. King* (2006) 38 Cal.4th 617, 621-628 [weapon possession statute required knowledge because silent as to intent and not public welfare offense]; see also *In re Jennings* (2004) 34 Cal.4th 254, 268 [finding public welfare offense after concluding statute silent regarding mens rea].)  Our Supreme Court has not had occasion to interpret

---

[5]      While the appellate court concluded a defendant must know he or she is in possession of an assault weapon, our Supreme Court concluded the criminal negligence standard of knew or reasonably should have known was appropriate.  (*In re Jorge M.*, *supra*, 23 Cal.4th at p. 885.)

a statute similar to possession of a machine gun, where a knowledge requirement is referenced regarding one act but not the other.

Given this history, we now return to possession of a machine gun and conclude it is a strict liability offense. The reasoning of *Daniels* and *Corkrean* rings true in light of current case law. Both *Staples* and *Jorge M.* concluded the statutes at issue there required some form of knowledge because the statutes were silent. (*Staples v. United States*, *supra*, 511 U.S. at pp. 605-606, 619 [128 L.Ed.2d at pp. 615-616, 624-625]; *In re Jorge M.*, *supra*, 23 Cal.4th at p. 872.) Here, that is not the case -- the statute mentions knowledge in relation to transportation and not in relation to possession. (§ 32625, subd. (a).) Because the statute contains a knowledge requirement, it is not like the silent statutes in *Staples* and *Jorge M.*, and we can imply a legislative intent through the plain meaning of the statute. The Legislature's selective use of the word knowing in the statute should not be ignored by California courts. We agree with the *Daniels* and *Corkrean* courts that the failure to specify scienter for possession of a machine gun, when one was specified for transportation, indicates the Legislature intended the crime of possession to be accomplished without knowledge.

Further, the language prohibiting possession and transportation of a machine gun was enacted in 1933 and determined to define a strict lability offense by its express terms in 1953, and again in 1984. (Stats. 1933, ch. 450, p. 1170, § 2; *People v. Corkrean*, *supra*, 152 Cal.App.3d at pp. 38-39; *People v. Daniels*, *supra*, 118 Cal.App.2d at pp. 344-345.) It then went unchanged for decades after that determination, despite amendments to the statute itself and other portions of the Control of Deadly Weapons Act, not to mention an overhaul of the entire scheme to ensure statutes imposing criminal penalties are easily understandable. (See *Corkrean*, at p. 39; see also § 32625; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1080 (2009-2010 Reg. Sess.) as amended Apr. 7, 2010.) The Legislature is presumed to know the law. (*Corkrean*, at pp. 39-40.) Its inaction in amending the possession element of the statute in spite of cases concluding it a strict liability offense, leads us to the conclusion it intended the crime to be a strict liability offense.

15

We are cognizant that times have changed, and possession of a machine gun is not always as obvious as the *Daniels* court described it. (*People v. Daniels*, *supra*, 118 Cal.App.2d at p. 345.) Given modern advances in weapon technology, it is possible the Legislature never envisioned a situation where formally-legal firearms could be internally modified without external clues to the modifications, much like the situation in this case. Still, the language of the statute combined with its history, persuade us the offense remains strict liability. For these reasons, sufficient evidence supports defendant's conviction for possession of a machine gun.

## III

### *There Was No Instructional Error*

During discussions about jury instructions, defense counsel requested the court instruct the jury using a special instruction defining possession for the purposes of the charged offenses. The special instruction provided: "To *possess* a firearm means to know of its presence, and to take possession and control [of] it. Mere presence near or access to the firearm is not enough. [¶] Two or more people can possess a firearm at the same time. A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." The court denied defendant's request stating it thought the language confusing when compared to the pattern instructions on possession, which provided, "[a] person does not have to actually hold or touch something to possess it."

Defendant contends the court erred by refusing to instruct the jury with defense counsel's proposed instruction. Specifically, he argues the special instruction was required to be part of the instruction on accomplice testimony because, to prove guilt, the corroborating independent evidence needed to prove more than the fact that defendant was present and had knowledge of the crime. This, however, was not the argument defense counsel made in the trial court. Defense counsel offered the special instruction to pinpoint the standard required to find he possessed the weapon for the possession

16

offenses, not as an explanation of the corroborating evidence required to support Alanis-Rodriguez's testimony.  Defendant does not take issue with the court's refusal to include the special instruction with the possession instructions, and thus has forfeited that claim on appeal.  (Cal. Rules of Court, rule 8.204(a)(1)(B) [each point must be separately headed and supported by argument and authority if available].)

Instead, defendant's argument on appeal is unrelated to the special instruction.  Relying on *People v. Boyd* (1990) 222 Cal.App.3d 541 and *In re Michael T.* (1978) Cal.App.3d 907, he argues the court had a sua sponte duty to instruct as part of the instruction on accomplice testimony that the independent corroborating evidence needed to establish more than his mere presence near and knowledge of the crime.  These cases do not support defendant's position because they both stand for the proposition that mere presence near and knowledge of the crime is insufficient to amount to aiding and abetting, not guilt of the underlying crime.  (*Boyd*, at pp. 556-557; *In re Michael T.*, at p. 911.)  Here, as defendant concedes, Alanis-Rodriguez was an aider and abettor, thus his instructional claim fails.

IV

*The Electronic Search Condition Must Be Stricken*

The trial court sentenced defendant to three years of formal probation.  As part of his conditions of probation, the court imposed special condition 65, which provided: "The defendant provides specific consent within the meaning of [section] 1546 to any law enforcement agency seeking information provided by the California Electronic Communication Protection Act.  This includes consent to seize and examine call logs, texts and voicemail [*sic*] messages, photographs and emails, contained on any device or cloud or internet connected storage owned, operated, or controlled by the defendant, including but not limited to cell phones, computers, computer hard drives, laptops,

17

gaming consoles, mobile devices, tablets, storage media devices, thumb drives, Micro SD cards, external hard drives, or any other electronic storage devices, by whatever law enforcement agency is seeking the information.  The defendant shall also disclose any and all passwords, passcodes, password patterns, fingerprints, or other information required to gain access into any of the aforementioned devices."  When imposing this condition, the court made no comment, and neither did the probation report, as to the condition's applicability to preventing future criminality.[6]

Defendant contends the electronic search condition must be stricken for failing to comply with *Lent* and for violating his Fourth and Fifth Amendment rights.  The People argue defendant forfeited these claims for failing to object at sentencing.  Acknowledging this possibility, defendant argues his trial counsel was ineffective.

We exercise our discretion to reach the merits of defendant's challenge under *Lent* (see *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6), and agree the condition must be stricken.  Given this conclusion, we need not address defendant's remaining contentions.

Recently, in *Ricardo P.*, our Supreme Court concluded electronic search conditions are invalid under *Lent* because they are not reasonably related to future criminality when the record contains no indication a defendant "had used or will use electronic devices in connection with . . . illegal activity."  (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1116.)  There, the juvenile defendant admitted committing two felony burglaries and told a probation officer he was not thinking during the crimes and as a result stopped smoking marijuana " 'because he felt that [it] did not allow him to think

---

[6]     Defendant stated to the probation department that he was offered the job at the marijuana plantation through word-of-mouth.  Once hired and before being transported to the plantation, his phone was confiscated and he did not have access to it.  Alanis-Rodriguez made similar statements during his testimony.

clearly.' " (*Ibid.*) The trial court imposed an electronic search condition as a condition of probation, reasoning it was necessary to monitor the juvenile's compliance with the drug conditions imposed because minors typically brag about their drug use on the Internet. (*Id.* at pp. 1116-1117.)

Like in *Ricardo P.*, the electronic search condition satisfies the first two prongs of the *Lent* test in that the condition " ' "has no relationship" ' to the crime for which [defendant] was convicted [citation]; there is no indication that any electronic device was involved in the commission of the" weapon possessions and "the electronics search condition clearly ' "relates to conduct which is not in itself criminal." ' " (*In re Ricardo P.*, *supra*, 7 Cal.5th at p. 1119.) The question is whether the condition "satisfies *Lent*'s third prong -- that is, whether it ' "requires or forbids conduct which is not reasonably related to future criminality." ' " (*Ibid.*) We conclude that like *Ricardo P.*, defendant has satisfied the third *Lent* prong and demonstrated the condition is not related to future criminality.

Neither the trial court nor the probation report made reference to the purpose the electronic search condition served. Further, there is nothing in the record demonstrating that electronics were related to defendant's commission of the crimes or to any prior criminal conduct. Given this disconnect, the burden placed on defendant's privacy is substantially disproportionate to any perceived goal and is therefore invalid under *Lent* and must be stricken. (*In re Ricardo P.*, *supra*, 7 Cal.5th at pp. 1128-1129.)

DISPOSITION

The order granting probation is modified by striking the electronic search condition. As modified, the order is affirmed. Nothing in this opinion prevents the trial court from exercising its discretion, following a noticed hearing, to modify the probation terms if presented with additional facts that would tie an electronic search condition to defendant's future criminality as set forth in *Ricardo P.* (See § 1203.3, subds. (a), (b);

*People v. Leiva* (2013) 56 Cal.4th 498, 505 [order modifying probation based on the same facts exceeds the court's jurisdiction].)

/s/
Robie, Acting P. J.

We concur:

/s/
Murray, J.

/s/
Renner, J.