Filed 2/23/21 (Order modifying dissenting opinion as well as 1/27/21 modification order attached)

<u>CERTIFIED FOR PUBLICATION</u>

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JORGE JAIMES et al.,<br><br>  Defendants and Appellants. | F077504<br><br>(Kern Super. Ct. Nos. BF168932A,<br> BF168932B & BF168932D)<br><br>**ORDER MODIFYING<br>DISSENTING OPINION<br>[No Change in Judgment]** |

**THE COURT:**

It is ordered that the published dissenting opinion filed herein on January 25, 2021, be modified as follows:

On page 6 of Justice Poochigian's dissenting opinion, the last paragraph beginning "While Justice Werdegar may have believed it was unlikely the Legislature intended" shall be deleted and replaced with the following:

> While Justice Werdegar may have believed it was unlikely the Legislature intended for "in association" to mean "acting 'in association with *members* of a criminal street gang' " (***Albillar, supra***, 51 Cal.4th at p. 73 (conc. & dis. opn. of Werdegar, J.), a concurrence or dissent does not state the majority view and is not binding.  (*People v. Lopez* (2012) 55 Cal.4th 569, 585; *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 211; ***In re Marriage of Dade*** (1991) 230 Cal.App.3d 621, 629.)  Even if Justice Werdegar's separate opinion was controlling authority, however, it did not advocate a specific definition for "in association with," but instead criticized the majority opinion in ***Albillar*** for relying on the expert's opinion to provide substantial evidence in light of the prosecutor's purported erroneous definition of the phrase.  (***Albillar, supra***, 51 Cal.4th at pp. 71–72, 119 (conc. & dis. opn. of Werdegar, J.).)

This modification does not effect a change in the judgment.


POOCHIGIAN, Acting P.J.

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JORGE JAIMES et al.,<br><br>    Defendants and Appellants. | F077504<br><br>(Super. Ct. Nos. BF168932A,<br>BF168932B, BF168932D)<br><br>**MODIFICATION OF OPINION**<br>**[No Change in Judgment]** |

It is ordered that the partially published opinion filed on January 25, 2021, be modified as follows:

1. On page 9, add the following footnote at the end of heading I. of the Discussion section:

    \*      See footnote, *ante,* page 1.

2. On page 11, add the following footnote at the end of heading II. of the Discussion section:

    \*      See footnote, *ante,* page 1.

3. On page 11, add the following footnote at the end of heading III. of the Discussion section:

    \*      See footnote, *ante,* page 1.

4. On page 11, delete footnote * at the end of heading IV. in the Discussion section.

5. On page 15, delete footnote * at the end of heading V. in the Discussion section.

The modification does not change the judgment.

                                                                Smith, J.

WE CONCUR:


Poochigian, Acting P.J.


Snauffer, J.

Filed 1/25/21; See dissenting opinion (unmodified opinion)

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JORGE JAIMES et al.,<br><br>    Defendants and Appellants. | F077504<br><br>(Super. Ct. Nos. BF168932A,<br>BF168932B, BF168932D)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant Jorge Jaimes.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant Joseph Gonzales.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant Monica Magana.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Daniel B. Bernstein, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II. and III. of the Discussion.

**SEE DISSENTING OPINION**

-ooOoo-

Appellants Joseph Francisco Gonzales and Jorge Jaimes, both active gang members, forcibly entered a man's home. Gonzales held the homeowner at gunpoint while Jaimes stole miscellaneous property. Their getaway driver, Angie Ortiz, waited outside in a vehicle.[1] According to Ortiz, waiting alongside the vehicle was the theft's mastermind, appellant Monica Magana.

Gonzales, Jaimes, and Magana were tried jointly by jury. Ortiz settled her case and testified against the others. Gonzales, Jaimes, and Magana were each convicted for their respective roles in the robbery. The jury found true several gang and firearm enhancements. (Pen. Code,[2] §§ 186.22, subd. (b), 12022.5, subd. (a), 12022.53, subds. (b) & (e)).

On appeal, each appellant challenges the gang enhancement in two ways. One, they argue the evidence insufficiently proved the enhancement. Two, they argue the court erroneously defined "association"—an element of the gang enhancement—in response to the jury's request to define the term. The People oppose these claims.

Gonzales and Magana also raise individual claims. Magana argues her convictions are invalid because Ortiz's testimony was not sufficiently corroborated within the meaning of section 1111. She also argues Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136), enacted after the trial proceedings concluded, applies retroactively. If correct, Senate Bill No. 136 could potentially reduce her sentence by one year. The People concede these issues.

Gonzales argues one of the firearm enhancements was legally inapplicable and echoes Magana's Senate Bill No. 136 claim. The People concede these issues as well.

---

[1]    Ortiz is not a party to the appeal.

[2]    Undesignated statutory references are to the Penal Code.

2

We accept each of the People's concessions.[3] We further conclude the evidence sufficiently proved the gang enhancement. But the court's response to the jury's request for assistance was prejudicial error because, as we will explain, it focused the jury's attention towards the association between Gonzales and Jaimes and away from the requisite association between the crime and the gang. Accordingly, we reverse the gang enhancements and remand for further proceedings.

## BACKGROUND

*Charges*

The Kern County District Attorney charged each defendant with committing first degree robbery (§§ 212.5 & 213, count 2) and first degree burglary (§§ 459 & 460, count 3).[4] Gonzales and Jaimes were also charged with active participation in a criminal street gang (§ 186.22, subd. (a), count 5). Gonzales was further charged with possessing a firearm as a convicted felon (§ 29800, subd. (a), count 4).

For the robbery and burglary charges, the district attorney alleged the crimes were gang related (§ 186.22, subd. (b)). For the robbery charge, the district attorney alleged gang-related firearm enhancements (§ 12022.53, subds. (b) & (e)). For the firearm possession offense, the district attorney alleged Gonzales used a firearm (§ 12022.5, subd. (a)). Magana and Gonzales were alleged to have each previously served a prison term (§ 667.5, subd. (b)).

*Trial Evidence*

Angie Ortiz testified for the People. According to her, Monica Magana wanted to get a TV back from a man's house. Magana believed the man "was supposed to be at work" and the home was unoccupied. Ortiz agreed to help. Magana wanted to enlist help from Gonzales and Jaimes, "[s]o they could kick the door down and go inside and

---

[3]     As explained *post*, finding this claim in Magana's favor entitles her to acquittal on each charge. Her remaining contentions are moot.

[4]     Count 1, an alternative robbery charge, was dismissed during the trial.

3

get" the TV. Ortiz drove herself and Magana to find Gonzales and Jaimes. They met Gonzales and Jaimes who agreed to help and entered the vehicle.

Ortiz drove straight to the victim's house where the TV was located. After parking in front of the house, Gonzales and Jaimes exited and kicked the front door down, finding the house unexpectedly occupied.

The victim testified he was asleep in his living room when he heard the front "door [get] kicked in." Gonzales immediately pointed a gun at the victim while Jaimes attempted to remove the TV from the wall. Because they could not get the TV off the wall, Jaimes instead stole various electronics and miscellaneous items from around the house. Before fleeing, one or both of the men threatened the victim not to report the crime or they would return. The victim believed the men were "obvious[ly]" gang members based, in part, on their tattoos.

The victim's neighbor noticed the robbery and called the police. She told the police two men and two women fled from the house in a black vehicle. Surveillance footage from the neighborhood captured the same.

A few weeks later, Ortiz was stopped by police while driving the same vehicle involved in the robbery. She confessed her involvement and implicated Jaimes, Gonzales, and Magana. She stated Jaimes and Gonzales ultimately sold the stolen property and did not share the proceeds with her or Magana.

Bakersfield Police Officer Nathan Poteete testified as a gang expert witness for the People. He testified Gonzales and Jaimes were active members of the Loma Bakers street gang.[5] Poteete testified the "foundation of a gang is that they all respect one another." A person gains respect by "committing crimes for the gang itself." "A firearm is a tool for the Loma Bakers." Having a gun "elevates your status" in a gang.

---

[5] The evidence necessary to prove the existence of a criminal street gang (§ 186.22, subd. (f)) is not in dispute. Nor do Gonzales and Jaimes dispute they were in fact gang members at the time of the offense. We omit the corresponding evidence from our summary.

4

The primary activities of the Loma Bakers include robbery, burglary, illegal firearm possession, and assault with a firearm. Poteete opined that a crime involving "two active members of the Loma Bakers along with two female … associates conspir[ing] to break into a house and steal items from it," with the "two active members kick[ing] the door open," pulling a gun on the homeowner, stealing "electronics and other valuables," threatening the homeowner not to "report the incident or they will come back," fleeing with the women, and later selling "all of the items … and never giv[ing] any of the money" from the sale to the women is a crime committed "for the benefit of the Loma Bakers as well as in association."

Poteete's opinion had several bases. First, "[t]hey [were] conspiring to commit a burglary, which is one of the primary activities of the Loma Bakers." He thought it was "significant that the two gang members are the ones who go to the house and commit that offense, because they are associating with one another. They trust each other. They are very familiar with each other. Usually they commit crimes together; so they have probably done those before."

The explanation continued, "During the commission it turns into a residential robbery, which is also one of the primary activities of the Loma Bakers which is significant. The fact that one of the gang members says don't move or I will shoot you is significant because criminal threats is a primary activity of the Loma Bakers. As well as at the end of the crime he says if you tell anybody I will shoot you or harm you or you better not tell anybody. That's also a criminal threat, in my opinion, which is a primary activity of the Loma Bakers. Those statements right there benefit the – I'm sorry, the offense as well as the statements benefit the gang due to the fact that it further instills fear in the community."

Fear in the community permits the gang to commit further crimes because witnesses become "uncomfortable with talking to the police, uncomfortable saying anything because they have been threatened by gang members before, because they have

5

become a victim of gang crimes before. So in the commission of these crimes it further benefits the gang." And "the fact they take all the [money] and don't share any of the profits with the other two people who are not gang members is significant because, essentially, the gang members will use the profits" to purchase drugs, firearms, and bail bonds. He later conceded he was unaware how the profits were used in this case, but what was important was that the profits were kept by the gang members.

On cross-examination, Poteete explained the crime's main benefit is "fear in the community." Based on his training and experience with talking "to numerous community members," "when a violent act … happens, … more often than not [they assume]" gang members committed the act. He acknowledged gang members can commit crimes together without the crimes being gang related. An active gang member can commit a robbery that is not gang related. Gangs commit crimes to benefit themselves, not other gangs. Crimes benefit a gang even if the victim is unaware of a specific gang affiliation. Highly visible gang-related tattoos were significant to his opinion because they "state[] this is who I am, this is what I am about. And when you go do things people can see exactly who they are and what they are about."

In a series of " 'yes' or 'no' " questions, Poteete agreed two active gang members can commit a crime, including a primary activity crime, that is neither for the benefit of nor in association with their gang.

Based on his training and experience "in speaking with different gang members," "they trust one another when they commit these offenses. So that's the association factor. They respect each other. They know that the person they are committing it with isn't going to go and tell on them." While the parties attempted to nail down Poteete's precise definition of association, he repeatedly testified trust equals association. Trust is "why they are willing to go to the extent they did in the crime." "There's certain advantages definitely to committing a crime with multiple people, and that's how the gang commits their crimes. [¶] Additionally, association, they are expected to commit these crimes in

furtherance of the gang as well as that's kind of way [*sic*] they are brought up through it." That is why trust allows one gang member to rely on another not to panic when the crime escalates due to unanticipated circumstances.

Dr. Jesse De La Cruz testified as a gang expert on Jaimes's behalf. He repeatedly opined a crime mirroring that at issue was not gang related. He also testified gang members did not trust one another.

In rebuttal, Poteete testified "association with a gang" means "two or more gang members commit[ting] a crime together and it is based on … trust." He believed, "based on talking to [local] gang members," they "do trust each other." He later reiterated, "These gang members do trust each other, and that's part of what makes the gang so dangerous is that they can go commit these crimes and they can trust that the other gang member is not going to snitch or rat on them." He explained, "[T]he association they have built up with one another throughout their life as gang members and now they are committing these crimes together is the association factor, in my opinion." He then testified "association and benefit" are intertwined. But the primary factor in his association opinion is that two active gang members committed a crime together.

*Closing Arguments*

In closing argument, the prosecutor stated, "The real issue in this case … is to determine whether the crimes … were gang-related." The prosecutor argued the crimes benefited the gang because they increased Gonzales's and Jaimes's reputations, increased the gang's notoriety, and, "inferen[tially]," the profits from the crime went to the gang.

The crimes, according to the prosecutor, were associated with the gang because, "Committing a crime with another gang member, knowing he is a gang member, is in association." The prosecutor further explained, "[T]he rapid transition that occurred between a planned burglary and a spontaneous robbery is evidence that these two men trusted each other. They knew they could rely on each other." Gonzales trusted Jaimes would not panic because "gang members don't snitch on each other."

7

The attorneys for Gonzales and Jaimes did not dispute a crime was committed. They focused their arguments against the gang enhancement.[6] Jaimes's counsel pointed out there was no evidence the gang trained its members in how to commit crimes and there was no evidence Gonzales and Jaimes trusted each other due to their common gang membership. Counsel concluded the men did "not [use] any resources of the gang" to commit the crimes. Gonzales's counsel argued the inference the profits went to the gang was "speculative" and the crime was not associated with the gang because there was "no express identification with the gang during the offense."

In rebuttal, the prosecutor argued, "[I]s it reasonable to infer that they did this in association with their gang? That trust, that trust in each other, is sufficient for you to find that this was done in association with their gang."

***Relevant Jury Instructions and Deliberations***

The court instructed the jury with CALCRIM No. 1401. The instruction explained the gang enhancement required proof "that, one, the defendant committed the crime for the benefit of or in association with a criminal street gang and, two, the defendant intended to assist, further, or promote criminal conduct by gang members."

After deliberating for a few hours, the jury sought assistance and requested the court to "[p]lease define Calcrim #1401-benefit of or <u>association</u> with a criminal street gang … specifically define 'association.'" (Emphasis in original.) Outside the jury's presence, the court and counsel engaged in lengthy discussions about how to properly respond to the jury's request. The following morning, the court, over each defense counsel's objection, informed the jury:

> "Words that are not specifically defined in the instructions are to be understood according to their ordinary, everyday meaning …. The word 'association' is not specifically defined in CALCRIM No. 1401 and is used in this instruction to mean a group of two or more people coming together for a common interest and coming together to commit an act. The jury

---

**6** Jaimes's attorney also argued identity was not proven.

8

must consider all of the language set forth in CALCRIM No. 1401 as well as all the other instructions."

The jury returned a verdict about two hours later.

### *Verdict and Sentence*

Each defendant was convicted as charged. Jaimes was sentenced to serve 15 years to life in state prison. Gonzales was sentenced to serve 20 years to life in prison. Magana was sentenced to serve 16 years to life in state prison.

## DISCUSSION

We first address the claims the People concede: insufficient accomplice corroboration, a legally inapplicable firearm enhancement, and Senate Bill No. 136 retroactivity. We then address the sufficiency of the evidence to prove the gang enhancement and examine the court's response to the jury's request to define "association." We conclude the People's concessions are well-taken, the evidence sufficiently proved the gang enhancement, but the court prejudicially erred by misdescribing the enhancement's "association" element.

### I. *Magana's Convictions Are Invalid*

To convict Magana, the prosecution needed to corroborate Ortiz's testimony.[7] The People now concede the testimony was uncorroborated. We agree.

Section 1111 states: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." " ' "[T]he corroborating evidence may be circumstantial or slight and entitled to little consideration when standing alone, and it must tend to implicate the defendant by relating to an act that is an element of the crime. The corroborating evidence need not by itself establish every element of the crime, but it must, without aid from the accomplice's testimony, tend to

---

**7**    There is no dispute Ortiz was an accomplice to the crimes.

connect the defendant with the crime." ' " (*People v. Gomez* (2018) 6 Cal.5th 243, 307-308.)

"[A]n accomplice's testimony is not corroborated by the circumstance that the testimony is consistent with the victim's description of the crime or physical evidence from the crime scene. Such consistency and knowledge of the details of the crime simply proves the accomplice was at the crime scene, something the accomplice by definition *admits*. Rather, under section 1111, the corroboration must connect the defendant to the crime *independently* of the accomplice's testimony." (*People v. Romero and Self* (2015) 62 Cal.4th 1, 36 (*Romero and Self*).)

We determine whether accomplice testimony is sufficiently corroborated "without weighing the evidence and viewing the evidence in the light most favorable to the judgment." (*People v. Pedroza* (2014) 231 Cal.App.4th 635, 650.) " '[T]he trier of fact's determination on the issue of corroboration' is not binding on the reviewing court if the 'corroborating evidence … does not reasonably tend to connect the defendant with the commission of the crime.' " (*People v. Dalton* (2019) 7 Cal.5th 166, 245.)

Here, there was no evidence connecting Magana to the crime independent of Ortiz's testimony. No witness identified Magana and no forensic evidence linked her to the crime scene. The only evidence close to corroborating Ortiz's testimony was the 911 caller describing two females involved in the crime and a surveillance video showing the same. But this evidence "simply proves … [Ortiz] was at the crime scene." (*Romero and Self, supra,* 62 Cal.4th at p. 36.) It does not independently connect Magana "to the crime." (*Ibid*.)

Accordingly, the evidence to prove the crimes charged against Magana was legally insufficient. She is entitled to a judgment of acquittal on each charge.[8] (*People v. Rodriguez* (2018) 4 Cal.5th 1123, 1128-1129.)

---

[8] Magana's remaining claims are moot.

10

## II. The Firearm Enhancement Does Not Apply to Count 4

Gonzales's conviction in count 4 for illegally possessing a firearm (§ 29800, subd. (a)) was enhanced by four years pursuant to section 12022.5, which prohibits "personally us[ing] a firearm in the commission of a felony." Because illegally possessing a firearm is a static offense which is complete upon possession, a person cannot "use[]" the firearm "in the commission of [the] felony." (§ 12022.5, subd. (a); *In re Pritchett* (1994) 26 Cal.App.4th 1754, 1757-1758; *People v. Arzate* (2003) 114 Cal.App.4th 390, 400-401.)

The section 12022.5 enhancement does not apply to firearm possession crimes like section 29800. The enhancement to count 4 is stricken.

## III. Senate Bill No. 136 Applies Retroactively

Gonzales argues Senate Bill No. 136 applies retroactively and his one-year sentence enhancement for previously serving a prison term is no longer valid. The People concede the issue.

Senate Bill No. 136 amended "section 667.5, subdivision (b), to eliminate the one-year prior prison term enhancement for most prior convictions. [Citation.] An exception, not applicable here, is made for a qualifying prior conviction on a sexually violent offense." (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 876 (*Reneaux*).)

"Because [Senate Bill No.] 136 became effective before [Gonzales's] judgment became final, we agree with the parties that the amended law applies to him retroactively." (*Reneaux*, *supra*, 50 Cal.App.5th at p. 876.) He is thus entitled to relief.

## IV. The Evidence Sufficiently Proved the Enhancement[*]

Jaimes argues the evidence was insufficient to prove the crime was committed either for the benefit of or in association with a gang (§ 186.22, subd. (b)). Gonzales joins in the argument. The People argue the evidence is sufficient. We agree the evidence is sufficient.

---

**\*** See footnote, *ante,* page 1.

11

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  "We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence." (*Ibid.*)

" ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Section 186.22, subdivision (b) enhances the punishment for any " 'felony committed for the benefit of, at the direction of, or in association with any criminal street gang, [and] with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 66 (*Albillar*).)  Promoting, furthering, or assisting any criminal conduct by gang members means "*any* criminal conduct," including "the criminal conduct underlying the offense of conviction." (*Ibid.*)  "There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang;* the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*." (*Id.* at p. 67.)

"[T]he Legislature included the requirement that the crime to be enhanced be committed for the benefit of, at the direction of, or in association with a criminal street gang to make it 'clear that a criminal offense is subject to increased punishment under the

12

STEP Act only if the crime is "gang related." ' [Citation.] Not every crime committed by gang members is related to a gang." (*Albillar, supra,* 51 Cal.4th at p. 60.)

An expert's opinion "is not only permissible but can be sufficient to support the … section 186.22, subdivision (b)(1), gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) But "purely conclusory" expert testimony is "of no use to the fact finder." (*People v. Prunty* (2015) 62 Cal.4th 59, 85 (*Prunty*).)

In *Albillar, supra,* the Supreme Court found the evidence proved "association with the gang" where substantial evidence showed "that defendants came together *as gang members*" to commit the crimes. (*Albillar, supra,* 51 Cal.4th at p. 62.) To support that conclusion, the Court explained the expert witness "testified that status and respect were two of the most important elements of gang membership. Status can be earned by 'being with other … gang members' " and committing crimes together. (*Id*. at p. 60.)

"As [the expert] explained, gang members choose to commit crimes together because 'it increases their success of completing the crime …. [I]t bolsters each other's confidence in the commission of the crime.' " (*Albillar, supra,* 51 Cal.4th at p. 60.) " 'They can trust on each other's loyalties. They can handle contingencies that may arise during the commission of crime that they did not plan for initially. They can multi-task during the commission of a crime.' " (*Id.* at p. 61.)

"Committing a crime with fellow gang members also enables the participants to rely on intimidation, which is 'one of [the gang's] mainstream daily objectives in furthering their gang interest.' In addition, the bonds within the gang 'would keep people from ratting on their own gang' to the police about the crimes that gang members were committing." (*Albillar, supra,* 51 Cal.4th at p. 61.)

13

"In [sum], defendants' conduct exceeded that which was necessary to establish that the offenses were committed in concert." (*Albillar, supra,* 51 Cal.4th at p. 61.) These underpinnings are materially indistinguishable from the evidence in this case.[9]

Here, Poteete testified in depth about gangs. He explained respect is a gang's foundation and respect is earned by committing crimes. Gang members commit crimes together which entails "certain advantages."[10] He repeatedly explained that gang members not only trust each other but rely on that trust to commit crimes. That trust enables them to both handle escalating circumstances and to themselves escalate criminal behavior while knowing a fellow gang member will neither panic nor later cooperate with law enforcement. His testimony regarding trust was founded in conversations with local gang members. The reliance-on-trust factor among gang members coincided with the trial's facts.

Gonzales and Jaimes entered the victim's house believing no one was home. Upon discovering the victim, Gonzales immediately pulled out a firearm and threatened the victim. The men were able to simultaneously intimidate the victim and steal items from throughout the house because they simply outnumbered the victim. Based on the record, neither man hesitated in committing the robbery, neither panicked upon discovering the victim, and neither testified in court against the other.

The critical issue for the jury to decide was whether the men relied on their relationship as gang members to commit the crimes. Based on Poteete's testimony, the factual record, and *Albillar, supra,* we find the jury could reasonably conclude the

---

[9] The expert in *Albillar, supra,* also testified gang members commit crimes together to train "younger" members and to have a witness that can verify to the gang a crime was indeed committed. (*Albillar, supra,* 51 Cal.4th at pp. 60-61.) The absence of similar evidence in the present case does not, in our view, compel a different conclusion.

[10] Although the expert never explained which "advantages" are inherent in committing crimes together, the record bore out specific advantages including dealing with contingencies, multi-tasking, and intimidation.

14

evidence proved beyond a reasonable doubt the crime was committed in association with a gang because the men "came together *as gang members*" to commit the crimes.[11] (*Albillar, supra,* 51 Cal.4th at p. 62.)

Where "substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer [the requisite] specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar, supra,* 51 Cal.4th at p. 68.) Accordingly, the evidence sufficiently proved the gang enhancement.[12]

## V.    *The Court Prejudicially Misdescribed "Association"**

During deliberations, the jury asked the court to define "association" as it was used in CALCRIM No. 1401, which in turn explains the section 186.22, subdivision (b) gang enhancement. The court chose to define it and informed the jury " 'association' … is used in this instruction to mean a group of two or more people coming together for a common interest and coming together to commit an act." The court also referred the jury back to consider the entire instructions as whole.

Gonzales and Jaimes now claim the court's definition "allowed the jury to find an association without the factor that there must also be an association with the gang, not just with each other." The People argue the court correctly defined "association" because "prov[ing] an affirmative link between the crime and the" gang is unnecessary. To

---

[11]    In a concurring and dissenting opinion in *Albillar, supra,* Justice Werdegar criticized the majority opinion's conclusion the crimes were committed in association with a gang. As she explained, "What the Legislature intended by 'in association with any criminal street gang' is unclear, but that it meant acting 'in association with *members* of a criminal street gang' is unlikely." (*Albillar, supra,* 51 Cal.4th at p. 73 (conc. & dis. opn. of Werdegar, J.).)

[12]    Because the evidence is sufficient to prove the association theory, we need not address the benefit theory in this case. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129; *People v. Ghobrial* (2018) 5 Cal.5th 250, 278.)

*    See footnote, *ante,* page 1.

15

bolster the argument they quote *People v. Garcia* (2016) 244 Cal.App.4th 1349, 1367 (*Garcia*) and assert, " 'Committing a crime in concert with known gang members can be substantial evidence that the crime was committed in "association" with a gang.' " They also argue any error is harmless. We conclude the court prejudicially misdescribed the "association" element.

Instructional error claims are reviewed de novo.[13] (*People v. Cole* (2004) 33 Cal.4th 1158, 1210 (*Cole*).) " 'Misdescription of an element of a charged offense is subject to harmless error analysis and does not require reversal if the misdescription was harmless beyond a reasonable doubt.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 69 (*Brooks*); *People v. Aledamat* (2019) 8 Cal.5th 1, 9.)

As the People note, "there does not appear to be any case containing a precise legal definition of the word 'association' in the gang context." A definition, however, is readily ascertainable from the statute's plain language and the Legislature's intent to enhance only crimes that are "gang related." (*Albillar, supra,* 51 Cal.4th at p. 60.)

Relevant to this issue, section 186.22, subdivision (b), enhances the punishment for "any person who is convicted of a felony committed … in association with any criminal street gang." Contrary to the People's argument, the statute plainly requires an association *between the crime and the gang.* (*Albillar, supra,* 51 Cal.4th at p. 62 [concluding crimes "committed … in association with the gang."]; *Prunty, supra,* 62 Cal.4th at pp. 80-81 [enhancement requires benefit for, at direction of, or association with "the … gang"]; *People v. Martinez* (2004) 116 Cal.App.4th 753, 761 ["The crime itself must have some connection with the activities of a gang"].)

---

[13] Initially, the People urge the proper standard of review applicable to this claim is the abuse of discretion standard. The People are misguided. The abuse of discretion standard applies to the "*decision* by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746, emphasis added.) Once the court chooses to provide further instruction, a challenge to *that* instruction presents a pure instructional error claim subject to de novo review.

16

In this context, "association" simply means the committed felony is involved with or connected to a specific gang.[14] Because the Legislature intended to enhance only those felonies which are gang related, a nominal, passive, or trivial association will not suffice. (*Albillar, supra,* 51 Cal.4th at p. 62 ["The enhancement set forth in section 186.22(b)(1) does not pose a risk of conviction for mere nominal or passive involvement with a gang."]; *Garcia, supra,* 244 Cal.App.4th at p. 1367 [" a 'crime may not be found gang related … based solely upon the defendant's criminal history and gang affiliations. The crime itself must have some connection with the activities of a gang.' "]; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*) ["it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang"].)

The requisite "association" need not be overbearing or tangible. It must, however, actively associate the committed felony with the gang. For example, utilizing a gang-owned or gang-provided firearm to commit a felony is an active and tangible association. Reliance on "the apparatus of the gang" to commit a crime exemplifies an active and intangible association. (*Albillar, supra,* 51 Cal.4th at p. 60.) Such associations are sufficient even where the crime is not otherwise gang related.[15] In

---

**14** Association is defined as "being involved with or connected to someone or something." (Cambridge English Dict. (Online ed. 2020) <https://dictionary.cambridge.org/us/dictionary/english/association> [as Jan. 12, 2021], archived at: <https://perma.cc/E6LM-8UHQ>.) The usage examples are: "[H]er association with the university," and, "This event was organized in association with a local school."

**15** It bears emphasizing "association" itself is insufficient to prove the gang enhancement. Association must be accompanied by "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1); see, e.g., *People v. Franklin* (2016) 248 Cal.App.4th 938, 948 ["There are two prongs to the gang enhancement under section 186.22, subdivision (b)(1), both of which must be established by the evidence."].)

contrast, passive conduct like gang membership alone is insufficient.  (See, e.g., *ibid*. ["Not every crime committed by gang members is related to a gang."].)

We do not, however, hold a court must sua sponte further define "association."  That issue is not presented.  Nonetheless, "[e]ven if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly." (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.)  A court choosing to further define "association" should carefully explain three points.  One, "association" means involvement or connection between the felony and the gang at issue.  Two, nominal, passive, and trivial associations are insufficient.  Three, the prosecution must also prove an attendant "specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).)

In arguing a link between the felony and a gang is not required to prove an association-based gang enhancement, the People cite several cases wherein "association" was proven, in part, by multiple gang members committing a crime together.  This argument mistakenly conflates a definition for "association" with certain conduct sufficient to prove an association-based enhancement.  We examine each case in turn.

As discussed *ante*, the Supreme Court in *Albillar, supra,* reviewed the record and concluded, "We therefore find substantial evidence that defendants came together *as gang members* … and, thus, that they committed these crimes in association with the gang." (*Albillar, supra,* 51 Cal.4th at p. 62, emphasis in original.)  More directly, association with the gang was proven because the "defendants relied on their common gang membership and the apparatus of the gang in committing the" crimes. (*Id*. at p. 60.)

In *Morales, supra,* an expert witness testified a gang member would "choose to commit a crime in association with other gang members because he could count on their loyalty.  They would 'watch his back ….'  In addition, the very presence of multiple gang members would be intimidating." (*Morales, supra,* 112 Cal.App.4th at p. 1197.)  The court found the evidence sufficient because "[t]here was no evidence [the crimes were

18

unrelated to the gang]. Thus, the jury could reasonably infer the requisite association from the very fact" the crimes were committed "in association with fellow gang members." (*Id*. at p. 1198.) At the same time, the court acknowledged "several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang." (*Ibid*.)

In *Garcia, supra,* the court found sufficient evidence of association with the gang because the defendants "were known members of the … gang, and there [was] sufficient evidence to draw an inference that they relied upon their gang membership in conducting the [crimes]. It [could] be reasonably inferred based upon expert testimony and the circumstances of the crimes that [the defendants] knew that, as fellow … gang members, they could count on each other to assist when engaging in crimes of opportunity against victims in their territory and could count on the other gang members' silence if confronted by the police." (*Garcia, supra,* 244 Cal.App.4th at pp. 1368-1369.)

Notably absent from these cases is any definition of "association," let alone a definition in the manner the People prescribe, i.e., multiple gang members acting in concert to commit a felony. Indeed, such a definition is irreconcilable with section 186.22, subdivision (b), which requires neither gang membership (*Albillar, supra,* 51 Cal.4th at pp. 67-68), nor multiple actors for liability to attach (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138-1139 ["A lone gang member … would not be protected from having that felony enhanced by section 186.22(b)(1)"]). Defining " 'association' … as it is used in [CALCRIM No. 1401] to mean a group of two or more people coming together for a common interest and coming together to commit an act," as the court here did, is inconsistent with the statute and clear error. The error was prejudicial for two reasons.

Foremost, the trial focused primarily on whether the gang enhancement applied. If the jurors believed the "benefit" theory was proven they could have found the enhancement true without resort to seeking assistance with the alternative "association"

19

theory. Their request for assistance reasonably suggests the jury was not convinced with either theory. And the fact their verdict followed shortly after the court's error further suggests the error was significant. On this record, it is more than reasonable the court's erroneous description of "association" diverted the jury's focus away from the crime's association with a gang and towards an association between Gonzales and Jaimes.

Second, the court's "association" definition effectively reduced the prosecution's burden of proof. Gonzales and Jaimes were already charged with actively participating in a criminal street gang (§ 186.22, subd. (a)) due to the fact they—two members of the same gang—committed these crimes in tandem. Their attorneys largely conceded the active gang participation offense by choosing to focus efforts against the gang enhancement. In other words, the fact the men came "together to commit an act," as the court defined "association," was undisputed. The court's definition essentially removed the "association" element from the jury's consideration. (See *Cole, supra,* 33 Cal.4th at p. 1208 ["An instructional error relieving the prosecution of its burden violates the defendant's rights under both the United States and California Constitutions."]; *People v. Miller* (2008) 164 Cal.App.4th 653, 662 ["It is error of constitutional dimension for the court to remove an essential element of a crime from the jury's consideration by its response to a question posed during deliberations."].)

Finally, the court's inadvertent diversion was not cured by referring the jury to the instructions as a whole. The only instruction relevant to "association" was CALCRIM No. 1401. And the court incorrectly defined association *specifically* "as it is used in [CALCRIM No. 1401]." Referring the jury back to the instruction it already expressed an inability to comprehend could not possibly alleviate the prejudice inherent in actively confounding the exact same instruction. To hold otherwise would defy logic.

In sum, the court's error is not harmless beyond a reasonable doubt because there is no basis to conclude it was " ' "unimportant in relation to everything else the jury

20

considered on the issue." ' " (*Brooks, supra,* 3 Cal.5th at p. 70.)  The section 186.22, subdivision (b) enhancements are reversed.**16**

## DISPOSITION

Magana's judgment is reversed.  Gonzales's and Jaimes's sentences are vacated.

As to both Gonzales and Jaimes, the true findings on the section 186.22, subdivision (b) enhancements to counts 2 and 3 are reversed.  For Jaimes, the true finding on the section 12022.53, subdivision (b) enhancement to count 2 is reversed.  For Gonzales, the true findings on the section 12022.5, subdivision (a) enhancement to count 4 and the section 667.5, subdivision (b) enhancement are stricken.

Upon remand, the trial court is directed to enter a judgment of acquittal on counts 2 and 3 in Magana's favor.  The court shall conduct other proceedings consistent with this opinion, including, if necessary, retrying the reversed enhancements.

SMITH, J.

I CONCUR:


SNAUFFER, J.

---

**16**     The section 12022.53, subdivision (b) firearm enhancement to count 2 for Jaimes is dependent on a section 186.22, subdivision (b) gang enhancement true finding. (§ 12022.53, subd. (e).)  Because we are reversing the gang enhancement, we must also reverse the firearm enhancement as to Jaimes only.  We do so in the disposition, *post*.

The parties also address an error in the abstracts of judgment.  These claims are mooted by the disposition.

POOCHIGIAN, Acting P.J., Dissenting.

While I agree that the jury's true findings on the gang enhancements for both defendants are supported by substantial evidence, I respectfully dissent to the majority opinion's conclusion the gang enhancements must be reversed. I disagree that the court's response to the jury's question "prejudicially misdescribed the 'association' element" of the gang enhancement, that section Penal Code section 186.22, subdivision (b)(1)[1] "plainly requires an association *between the crime and the gang,*" or that a link between the felony and the gang itself is required to prove an "association-based gang enhancement." (Maj. opn., *ante*, at pp. 16, 17, 18.)

## The gang enhancement

In order to prove the section 186.22, subdivision (b)(1) gang enhancement, "[f]irst, the prosecution is required to prove that the underlying felonies were 'committed for the benefit of, at the direction of, or in association with any criminal street gang.' [Citation.] Second, there must be evidence that the crimes were committed 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' [Citations.]" (*People v. Rios* (2013) 222 Cal.App.4th 542, 561.)

The first prong is worded in the disjunctive so that "a gang enhancement may be imposed without evidence of any benefit to the gang so long as the crime was committed in association with or at the direction of another gang member." (*People v. Weddington* (2016) 246 Cal.App.4th 468, 484.) "The first prong therefore may be established with substantial evidence that two or more gang members committed the crime together, unless there is evidence that they were 'on a frolic and detour unrelated to the gang.' [Citations.]" (*Ibid.*; *People v. Albillar* (2010) 51 Cal.4th 47, 61–62 (*Albillar*).)

The second prong of section 186.22, subdivision (b)(1) "encompasses the specific intent to promote, further, or assist in *any* criminal conduct by gang members—including

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

the current offenses—and not merely *other* criminal conduct by gang members."
(*Albillar, supra*, 51 Cal.4th at p. 65.) "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id.* at p. 68.)

The majority opinion cites to three cases in support of the assertion that there must be an association between the crime and the gang to prove the enhancement based on the "association" element. (Maj. opn., *ante*, at p. 17.) I believe these cases do not support the stated conclusion, and the court's response to the jury was consistent with the California Supreme Court's ruling in *Albillar*.

**Albillar**

*Albillar* (maj. opn., *ante*, at p. 17) is cited for the holding that defendant's crimes must have been "committed … in association with the gang." (*Albillar, supra*, 51 Cal.4th at p. 62.) While *Albillar* addressed whether there was substantial evidence to support the gang enhancement, I believe it also addressed the "association" aspect of the "gang-related" prong of the enhancement in a manner consistent with how the trial court replied to the jury in this case.

In *Albillar*, three defendants, who were relatives and members of the same gang, were convicted of sexually assaulting a teenager while acting in concert, with gang enhancements found true. (*Albillar, supra*, 51 Cal.4th at p. 60.) *Albillar* acknowledged "[n]ot every crime committed by gang members is related to a gang," but held the crimes in that case were "gang related" and "they were committed in association with [a] gang" because the record "supported a finding that the defendants relied on their common gang membership and the apparatus of the gang in committing the sex offenses against [the victim]." (*Ibid*.)

2

"Because each defendant was a member of the Southside Chiques, he could and did rely on the others' cooperation in committing the offenses against [the victim]…. Defendants knew, because of the nature of the gang, that no one would be a 'rat'…. Defendants also knew that fear of the gang would prevent [the victim] from reporting the incident to the police ….

"In short, defendants' conduct exceeded that which was necessary to establish that the offenses were committed in concert. Defendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together. They relied on the gang's internal code to ensure that none of them would cooperate with the police, and on the gang's reputation to ensure that the victim did not contact the police. We therefore find substantial evidence that defendants came together *as gang members* to attack [the victim] and, thus, that they committed these crimes in association with the gang. [Citations.]" (*Id.* at pp. 61–62.)[2]

*Albillar* also found substantial evidence to support the second element of the gang enhancement and rejected defendants' argument that it required "the specific intent to promote, further, or assist a *gang-related* crime." (*Albillar*, *supra*, 51 Cal.4th at p. 67.)

"The enhancement already requires proof that the defendant commit a gang-related crime in the first prong – i.e., that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang. [Citation.] There is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang;* the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members.* [Citations.]" (*Id.* at p. 67.)

---

[2] *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198, is cited for the holding that " 'it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang.' " (Maj. opn., *ante*, at p. 17.) *Morales* was decided before *Albillar* but addressed the same issue and held the evidence that the defendant in that case "knowingly committed the charged crimes in association with two fellow gang members was sufficient to support the jury's findings on the gang enhancements …." (*Morales, supra*, 112 Cal.App.4th at p. 1179.)

3

**Prunty**

*People v. Prunty* (2015) 62 Cal.4th 59 (*Prunty*) is cited (maj. opn., *ante*, at p. 17) for the holding that the enhancement requires evidence the crime was committed for the benefit of, at direction of, or in association with "the … gang." (*Prunty*, at pp. 80–81.)

*Prunty* did not address the association aspect of the enhancement but instead explained "what type of showing the prosecution must make when its theory of why a criminal street gang exists turns on the conduct of one or more gang subsets." (*Prunty, supra*, 62 Cal.4th at p. 67.) *Prunty* held that "when the prosecution seeks to prove the street gang enhancement by showing a defendant committed a felony to benefit a given gang, but establishes the commission of the required predicate offenses with evidence of crimes committed by members of the gang's alleged subsets, it must prove a connection between the gang and the subsets." (*Id*. at pp. 67–68.) *Prunty* found the prosecution in that case failed to introduce sufficient evidence to show "a connection among the subsets it alleged comprised a criminal street gang, so [the defendant] was not eligible for a sentence enhancement …." (*Id*. at p. 68.) *Prunty* concluded that predicate offenses could be committed by multiple gang subsets if the prosecution shows "the group the defendant acted to benefit, the group that committed the predicate offenses, and the group whose primary activities are introduced, is one and the same." (*Id*. at p. 82.)

**Martinez**

Another case cited is *People v. Martinez* (2004) 116 Cal.App.4th 753 (*Martinez*), (maj. opn., *ante*, at p. 17) for the holding that "[t]he crime itself must have some connection with the activities of a gang …." (*Martinez*, at p. 761.)

*Martinez* addressed the imposition of a gang registration requirement, in a case where a gang enhancement was not alleged or found true. In that case, the trial court ordered the defendant to register as a gang member because it found the defendant's offense was "gang related," which is expressly required to impose such an order under

4

subdivision (b)(3) of section 186.30.[3] (*Martinez, supra*, 116 Cal.App.4th at pp. 756–758.) *Martinez* reversed the registration order because there was insufficient evidence that the defendant's commission of an auto burglary "was other than a crime intended to benefit defendant personally." (*Id*. at p. 762.) "In accordance with the unambiguous language of the statute, we conclude that a *crime* may not be found gang related within the meaning of section 186.30 based solely upon the defendant's criminal history and gang affiliations. The crime itself must have some connection with the activities of a gang, which we conclude means a 'criminal street gang' as defined elsewhere" in section 186.22. (*Martinez*, at p. 761.) *Martinez* further held that a crime committed by a defendant "in association with other gang members or demonstrated to promote gang objectives may be gang related" to support a registration order under the express provisions of section 186.30. (*Id*. at p. 762.)[4]

**Analysis**

*Albillar* and the other cases cited herein do not support the conclusion that the "association" aspect of the gang enhancement requires a link between the crime and the gang itself. *Albillar* did not provide a new definition for the phrase "in association with any criminal street gang," or hold that the phrase has a technical legal meaning. Instead, *Albillar* clearly held the gang enhancement may be found true when multiple defendants

---

[3] Section 186.30 states that the court shall impose a gang registration order when a person is convicted or has a juvenile petition sustained for (1) the substantive offense of active participation in a gang (§ 186.22, subd. (a)); (2) any crime where the section 186.22, subdivision (b)(1) gang enhancement is found true; or (3) any crime "that the court finds is *gang related* at the time of sentencing or disposition." (§ 186.30, subds. (b)(1)–(b)(3), italics added.)

[4] *People v. Garcia* (2016) 244 Cal.App.4th 1349, 1367, is cited for the proposition that " a 'crime may not be found gang related … based solely upon the defendant's criminal history or gang affiliations. The crime itself must have some connection with the activities of a gang.' [Citation.]" (Maj. opn., *ante*, at p. 17.) This quote from *Garcia*, however, is taken from and cites to *Martinez*, which addressed the gang registration statute and not the gang enhancement. (*Garcia, supra*, 244 Cal.App.4th at p. 1367.)

come "together as *gang members*" to commit crimes and, as a result "they committed the[] crimes in association with the gang. [Citations.]" (*Albillar, supra*, 51 Cal.4th at p. 62.)

The majority opinion's conclusion appears more consistent with Justice Werdegar's concurring and dissenting opinion in *Albillar*, which stated:

> "What the Legislature intended by 'in association with any criminal street gang' is unclear, but that it meant acting 'in association with *members* of a criminal street gang' is unlikely. That the Legislature distinguishes between the gang and members of the gang is shown by its use of both terms throughout section 186.22, including subdivision (b). Indeed, as indicated above, interpreting 'criminal street gang' in subdivision (b) to mean '*members* of a criminal street gang' creates a redundancy in the provision, as the second prong of section 186.22, subdivision (b) already requires that the crime have been committed 'with the specific intent to promote, further, or assist in any criminal conduct *by gang members*.' (Italics added.) [¶] The majority provides a different definition of 'in association with' a gang, explaining it means that in committing the offenses defendants relied on their 'common gang membership and the apparatus of the gang.' [Citation.] Again, by focusing on gang members as associating *with one another,* rather than as associating *with the gang,* the majority's definition also threatens to render a portion of section 186.22, subdivision (b) redundant." (*Albillar, supra,* 51 Cal.4th at p. 73 (conc. & dis. opn. of Werdegar, J.).)

While Justice Werdegar may have believed it was unlikely the Legislature intended for "in association" to mean "acting 'in association with *members* of a criminal street gang' " (*Albillar, supra,* 51 Cal.4th at p. 73, (conc. & dis. opn. of Werdegar, J.), a concurrence or dissent does not state the majority view and is not binding. (*People v. Gangl* (2019) 42 Cal.App.5th 58, 79; *In re Marriage of Dade* (1991) 230 Cal.App.3d 621, 629.) Even if Justice Werdegar's separate opinion was controlling authority, however, it did not advocate a specific definition for "in association with," but instead criticized the majority opinion in *Albillar* for relying on the expert's opinion to provide

6

substantial evidence in light of the prosecutor's purported erroneous definition of the phrase. (*Albillar, supra,* 51 Cal.4th at pp. 71–72 (conc. & dis. opn. of Werdegar, J.).)

I believe the court's response to the jury in this case did not run afoul of *Albillar*'s analysis about the "association" aspect of the gang enhancement, and it did not give a legally erroneous definition of "association." In addition, the court's response referred the jury back to CALCRIM No. 1401 on the elements of the enhancement: "To prove this allegation the People must prove that, one, the defendant committed the crime for the benefit of or in association with a criminal street gang and, two, the defendant intended to assist, further, or promote criminal conduct by gang members." The jury was thus instructed that it had to find both prongs true in order to return true findings on the gang enhancements and, as explained in *Albillar*, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar, supra,* 51 Cal.4th at p. 68.)

POOCHIGIAN, Acting P.J.

7